Juan A. G. MARTINEZ, Plaintiff,

v.

PERMANENTE STEAMSHIP CORPO-
RATION, a corporation, Defendant.

Civ. No. 1764.

United States District Court
D. Hawaii.

Jan. 13, 1965.

Hyman M. Greenstein, Robert A. Franklin, Honolulu, Hawaii, S. Eldridge Sampliner, Cleveland, Ohio, and Victor G. Hanson, Detroit, Mich., for plaintiff.

Anderson, Wrenn & Jenks, Honolulu, Hawaii, of counsel, by George L. Dyer, Jr., Honolulu, Hawaii, for defendant.

TAVARES, District Judge.

The Complaint in this case was filed August 5, 1959, against two defendants, Permanente Cement Company and Permanente Steamship Corporation. Permanente Cement was dismissed as a party defendant before trial. Hereinafter the

term defendant refers, therefore, only to the sole remaining defendant, Permanente Steamship Corporation. The Complaint sets forth two causes of action, the first of which is based on the Jones Act and seeks damages for injuries alleged to have been sustained by plaintiff in a fall from a bunk on board the S. S. Permanente Silverbow, on July 24, 1957, caused by the alleged unseaworthiness of the ship. On this first cause of action the jury rendered a general verdict in favor of the defendant.

The second cause of action seeks an award for maintenance and cure and, by stipulation, was reserved for decision by the Court. On this issue the defendant in its Answer admitted that it was a California corporation and submitted to the jurisdiction of this Court and filed a general appearance. Defendant admitted that at the time of the accident concerned it owned and operated the vessel S. S. Permanente Silverbow; it employed the plaintiff as a seaman, cook and baker; he was a member of the crew and he sustained injury aboard the ship on or about the 24th day of July, 1957.

Although admitting the general proposition of law that it is the defendant's duty to provide plaintiff with maintenance and cure upon his becoming sick or injured while in the employ of defendant, the defendant claims the following defenses: (a) that injuries claimed to have been sustained by plaintiff, and which now constitute the basis for his claim of maintenance and cure, were not occasioned by the fall or accident of July 24, 1957, or any injuries actually sustained by the plaintiff on board ship, but were due to other and unrelated issues; (b) as a further defense, defendant alleges it has furnished maintenance and cure or caused maintenance and cure to be furnished plaintiff to the full extent required by law.

Included in this defense is the claim that if the plaintiff's present ailments in the nature of alleged mental illness are real, which defendant denies, the plaintiff's condition has reached a chronic and more or less static state beyond which further medical treatment will not effect a cure and hence the right to maintenance and cure has ceased.

The Court has carefully considered all of the testimony, exhibits, the pretrial order and other stipulations and admissions, and the record, and on the basis of all of the facts as disclosed thereby, the Court makes the findings of fact and conclusions of law hereinabove and hereinafter set forth. When this decision speaks of "now" or of conditions or facts existing in the present, it is to be understood that the Court is referring to the period of the trial of this case.

Although the evidence is to some extent conflicting, the Court finds that the preponderance of the evidence, and, indeed, the admissions of defendant itself, establishes the fact that the plaintiff on July 24, 1957, in the quarters assigned to him aboard the S. S. Permanente Silverbow suffered a bump on his head and sufficiently severe injuries to have caused, and which did cause, the illness from which he is now suffering, that he is in fact suffering from a form, at least, of mental illness, whatever it may be called, which renders him totally disabled to perform the duties of a seaman for which he was qualified and which he was able to perform before the accident.

In this connection, the Court especially notes that although highly-qualified medical experts testified on both sides and to a substantial extent, the testimony was conflicting as to whether the plaintiff is now suffering from any mental or physical illness or disability, and if so, the nature thereof, the Court finds from the preponderance of the testimony and evidence on this phase of the case, that the plaintiff is suffering from at least a mental illness, whether it be called a post-concussion syndrome or organic psychosis, or by some other name, and that such illness is not faked or simulated. Likewise the Court finds that the preponderance of this medical, and of the other evidence, establishes a causal connection between the present illness

and the injuries suffered from that accident. If, as some of the testimony tends to prove, the plaintiff was suffering from a latent and congenital condition of schizophrenia before and at the time of the accident, and is now suffering from an activation or "blowup" of that latent and possibly congenital condition, the Court is convinced by a preponderance of the evidence that the activation of that latent condition was caused and brought on by the accident and the injuries or conditions caused or induced thereby in a direct line of causal connection.

Therefore, unless the right to maintenance and cure was cut off by plaintiff's maritime employment subsequent to the accident, on other vessels owned by other employers, the plaintiff is entitled to maintenance and cure.

 The Court holds that, although subsequent to the termination of plaintiff's employment on the S. S. Permanente Silverbow, he was employed on other vessels owned by employers other than the present defendant, for various periods, these subsequent employments, under the circumstances of this case and under the better rule of law as this Court finds it to be among conflicting decisions, did not terminate his right to maintenance and cure which is based on conditions produced by the accident, but which conditions and their causal connection were either latent or not discovered or identified by him or others until after 1960. Koslusky v. United States, 208 F.2d 957, 2d Cir., 1953. Moreover, the Court finds that, because of the plaintiff's mental illness and mental condition, his acts or failure to act more seasonably or at all to alleviate his illness or condition do not constitute a waiver or estoppel on his part or otherwise cause him to forfeit his right and claim to maintenance and cure.

 The defendant has raised the question as to whether there is sufficient evidence upon which the Court can find any particular amount as the rea-

sonable and proper amount per day due for maintenance and cure. The Court finds that there is sufficient evidence (a) from the Answers to Interrogatories given by the plaintiff himself, wherein in answer to Interrogatory Number 11 propounded to him, the plaintiff answered that he had received maintenance and cure in 1958 and 1960 from other employers in the Hawaiian area at the rate of $56.00 a week and (b) from the testimony of the plaintiff himself at this trial to the effect that his necessary living expenses were $8.00 a day, to justify the Court in finding, as it hereby does, that $8.00 per day is the proper amount for maintenance and cure. There are some decisions which appear to have taken judicial notice of $8.00 per day as a minimum for maintenance and cure, but it is not necessary in this case for the Court to go this far.

In determining the period for which maintenance and cure is to be allowed, the Court accepts the statement made by plaintiff's counsel in their brief and in the argument, that plaintiff is claiming maintenance and cure only for the period commencing January, 1961, and thereafter, which excludes maintenance and cure for any time prior to January 1, 1961. The Court finds both from this admission and from all other evidence in the case that no maintenance and cure is allowable or, if allowable, was unpaid, for the period up to December 31, 1960.

Plaintiff claims maintenance and cure at least to date of trial, and contends that it should be allowed for additional time thereafter, on the theory that further treatment may cause improvement or cure. Plaintiff also concedes that from the allowable period after January 1, 1961, there must be deducted periods of hospitalization for which plaintiff did not have to pay. A claim is made for certain costs of hospitalization and other medical expenses, but the only evidence given was as to one bill from the San Diego Hospital for $550.00, which is hereby allowed.

 The Court finds that the plaintiff is not entitled to maintenance and

cure for any period subsequent to the time of trial, for the reason that the Court finds by a preponderance of the testimony of the medical witnesses, and other evidence, that at that time it was established that the plaintiff had reached a condition of chronic or static illness as to which there could be no prediction with reasonable medical certainty that further treatment would cure him, or would effect a permanent improvement of his then chronic and static condition. True, he will continue to need treatment to alleviate his present condition, but the Court sees no reasonable prospect of a cure, or a permanent betterment of his condition, and in line with the rule that maintenance and cure is allowable either until the seaman has recovered, or maximum cure has been achieved (Gilmore and Black, The Law of Admiralty, p. 268), the Court holds that liability for maintenance and cure terminated as of December 15, 1963, which is somewhere between the commencement of the final pretrial and the actual taking of testimony before the jury in this case. It is possible that the plaintiff may have reached this stage of chronic or static illness somewhat sooner than the middle of December, 1963, but the Court is giving him the benefit of the most favorable inferences that can be drawn in his behalf from the medical testimony—the Court taking the view that at least until the trial brought together all the medical testimony pro and con, it was not established that maximum cure had been achieved.

The foregoing are the general findings of fact and conclusions of law upon which this Court will base its final decision. However, the plaintiff's counsel will prepare more detailed proposed findings of fact and conclusions of law consistent with these general findings and conclusions, and submit the same within fifteen days to defendant's counsel, who will have a period of fifteen days thereafter within which to file objections to such proposed findings, after which the Court will enter final findings of fact and conclusions of law.

The plaintiff's counsel in connection with the foregoing will prepare a computation from the evidence of the exact periods of plaintiff's hospitalization between 1961 and the date of trial, which must be deducted from the total period of maintenance and cure, and computations will be made accordingly. If the parties do not agree on this particular item, or other items, the Court will, in the light of objections raised, make a decision thereon, or call for further argument thereon as the Court may feel necessary.