Edgar L. GORE
v.
MARITIME OVERSEAS CORPORATION
and
Ocean Cargo Ships, Inc.

Edgar L. GORE
v.
CLEARWATER SHIPPING CORP.
v.
MARITIME OVERSEAS CORPORATION
and
Ocean Cargo Ships, Inc.

Edgar L. GORE
v.
MARINE CARRIERS CORPORATION
and
Oceanic Petroleum Carriers, Inc.
v.
MARITIME OVERSEAS CORPORATION
and
Ocean Cargo Ships, Inc.

Edgar L. GORE
v.
MARINE CARRIERS CORPORATION
v.
MARITIME OVERSEAS CORPORATION
and
Ocean Cargo Ships, Inc.

Edgar L. GORE
v.
WATERMAN STEAMSHIP
CORPORATION
v.
MARITIME OVERSEAS CORPORATION
and Ocean Cargo Ships, Inc.

Edgar L. GORE
v.
VENORE TRANSPORTATION CO.

Nos. 131 of 1962, 163 and 449 of 1963,
279 of 1964, 39 and 271 of 1965.

United States District Court
E. D. Pennsylvania.

June 1, 1966.

Supplemental Opinion June 20, 1966.

Paul M. Goldstein, Philadelphia, Pa., for Gore.

Harrison G. Kildare, Philadelphia, Pa., for Maritime Overseas Corp. and Ocean Cargo Ships, Inc.

Robert N. Ferrer, Philadelphia, Pa., for Clearwater Shipping Corp., Marine Carriers Corp. and Oceanic Petroleum Carriers.

Thomas E. Byrne, Jr., Philadelphia, Pa., for Waterman Steamship Corp. and Venore Transporation Co.

SUR PLEADINGS AND PROOF

VAN DUSEN, District Judge.

These six admiralty actions were consolidated and tried to the court on December 13–15, 1965. Unless otherwise specified, all findings of fact shall be equally applicable to each of the first four captioned causes, as agreed to by the parties (N.T. 258–260).[1]

The libellant in all these actions, Edgar L. Gore (hereinafter "Gore"), was at all times herein relevant a seaman in the United States Merchant Marine (N.T. 235). Respondents in No. 131 of 1962 (who are also the impleaded respondents in Nos. 163 of 1963, 449 of 1963, 279 of 1964 and 39 of 1965), Maritime Overseas Corporation and Ocean Cargo Ships, Inc., are corporations which owned and/or operated the S. S. "Globe Carrier" (N.T. 235). Respondent in No. 163 of 1963, Clearwater Shipping Corporation, is a corporation which owned and operated the S. S. "Midland" (N.T. 235). Respondent in No. 449 of 1963, Oceanic Petroleum Carriers, Inc., is a corporation which owned and operated the S. S. "Elemir" (N.T. 235). Respondent in No. 279 of 1964, Marine Carriers Corporation, is a corporation which owned and operated the S. S. "Commander" (N.T.

---

1. The notes of testimony (N. T.) are filed as Document 33 in No. 131 of 1962 in Admiralty. On the last day of the trial (December 15, 1965), the action in No. 131 of 1962 was withdrawn by the libellant with prejudice (N. T. 235).

237). Respondent in No. 39 of 1965, Waterman Steamship Corporation, is a corporation which owned and operated the S. S. "Colorado" (N.T. 12). Respondent in No. 271 of 1965, Venore Transporation Company, is a corporation which owned and operated the S. S. "Chilore" (N.T. 222).[2]

Since the libellant originally instituted these six actions in order to recover maintenance and cure from his ship-owner-employers, it is necessary to set forth in some detail his lengthy medical history.[3]

On August 17, 1954, libellant, while at sea on the S. S. "Republic," slipped and injured his back (p. 32, Dep. of Gore, 2/26/63, filed as Document 34 in 131/1962). On August 23, 1954, he reported to Philadelphia, complaining that since the accident his back had bothered him. On August 26, 1954, he complained of lumbosacral pain, but said that his condition was improving. X-rays were negative for bone or joint pathology. On September 9, 1954, he was much improved and was marked "fit for duty" (p. 1, R.Com–2;[4] N.T. 148). Libellant thereafter returned to sea duty.

In March of 1955, he reported to Philadelphia on eight different occasions for treatment of a cut in his right hand which had become infected (p. 2, R. Com–2) and at no time during this period did he make any complaints about his back (N.T. 148). Libellant was treated for injury to his left elbow in 1955 and for a laceration of the left hand in 1957

(Dep. of Kaplan, filed as Document 30 in 131/1962, p. 11).

On December 22, 1957, libellant, in the course of his work on a ship, "Poling Bros. No. 9," felt a snap in his back while lifting a 75-pound hose. Pains in his back caused by this accident resulted in libellant seeking medical attention at Philadelphia, which referred him to Baltimore for intensive care for a "right inguinal hernia and lumbosacral strain" (RM–9). Libellant was hospitalized in Baltimore from January 4 to January 23, 1958, and again from February 4 to February 20, 1958, when he was discharged "not fit for duty for one month" (RM–9). During the hospitalization from January 4 to January 23, 1958, there was some radiation of back pain and the back pain was severe enough to merit postponement of the hernia operation (N.T. 114). During the hospitalization from February 4 to February 20, 1958, a right inguinal herniorrhaphy was performed and treatment was given for back complaint (RM–9). Also during this latter hospitalization period there were no significant leg symptoms and no spasm (N.T. 150), and the back showed a normal curve with sensory reflexes in the leg normal. There was no atrophy and straight leg raising was negative (N.T. 151). After recovery from surgery, he again returned to maritime employment.

Libellant was hospitalized in Baltimore on May 2, 1958, with a history of right shoulder pain. He was discharged on

---

2. For the sake of clarity and brevity, the following abbreviations of corporate names and corresponding ships will be used hereinafter: Maritime Overseas Corporation and Ocean Cargo Ships, Inc., will be collectively referred to as "Maritime" or S. S. "Globe Carrier;" Clearwater Shipping Corporation will be referred to as "Clearwater" or S. S. "Midland;" Marine Carriers Corporation as "Marine" or S. S. "Commander;" Oceanic Petroleum Carriers, Inc., as "Oceanic" or S. S. "Elemir;" Waterman Steamship Corporation as "Waterman" or S. S. "Colorado;" and Venore Transportation Company as "Venore" or S. S. "Chilore."

3. The United States Public Health Service Out Patient Clinic in Philadelphia will be referred to simply as "Philadelphia" and the United States Public Health Service Hospital in Baltimore will be referred to simply as "Baltimore," except when otherwise specifically indicated.

4. Exhibits are referred to by first letters: "L" for libellant, "RW" for respondents Waterman and Venore, "RM" for respondent Maritime, and "R.Com" for respondents Marine, Oceanic and Clearwater.

May 9, 1958, fit for duty (the diagnosis having been calcific peritendonitis) and was later readmitted with the same complaints on June 18, 1958. A curettement of calcium particles was performed and he was discharged on July 2, 1958 (RM–9). During these periods of hospitalization (May 2 to May 9, 1958, and June 18 to July 2, 1958), there was no treatment given to libellant for his back and no complaints or symptomatology referable to the back (N.T. 152–3).

On October 3, 1960, libellant reported to Philadelphia that three weeks previously he had had a dull pain in his left lower back which stopped the following day and then appeared in the back of his thigh. A day or so later the pain left his thigh and went to the back of his leg, where it persisted. The ankle was swollen for two days and the calf muscles were weak, and he could not stand on the toes of that foot. Whirlpool baths were given to the extremity and by October 25, 1960, the leg was much better (RM–5; p. 18, Dep. of Kaplan).

Libellant joined the S. S. "Globe Carrier" on or about December 28, 1961 (p. 3, Dep. of Gore, 2/26/63, Document 34 in 131/1962). On December 30, 1961, the libellant was examined by Dr. George E. Burden in Philadelphia for medical approval of his fitness for sea duty as a crew member on the S. S. "Globe Carrier" (N.T. 172). Dr. Burden found the libellant physically fit for duty (N.T. 178). The libellant did not disclose his previous medical history concerning his back (N.T. 173). At the time of his physical examination, the libellant thought himself physically fit (p. 4, Dep. of Gore, 2/26/63, Document 34 in 131/1962). The libellant did not tell Dr. Burden of his previous ailments because "they hadn't bothered me for years" (p. 15, Dep. of Gore, 10/19/65, filed as Document 35 in 163/1963). Dr. Burden might have investigated libellant's back condition had he known of it on December 30, 1961 (N.T. 180).

On January 17, 1962, the S. S. "Globe Carrier" was in a Rotterdam shipyard undergoing repairs (p. 4, Dep. of Gore, 2/26/63, Document 34 in 131/1962). Libellant and other crew members had been assigned to carrying dry stores from back aft to midship in order to enable the shipyard workers to make the necessary repairs (p. 5, Dep. of Gore, 2/26/63, Document 34 in 131/1962; p. 17, Dep. of Kukk, filed as Document 21 in C.A. 31393, admitted in evidence in these cases as N.T. 194). On his first trip in moving stores at about 1600 hours, while carrying two cartons of canned milk weighing approximately 50 pounds, the libellant slipped and fell as he was stepping across the raised sill of the bulkhead doorway. The fall was caused by libellant's slipping on a "log" which he did not see and which was used as a temporary intermediate step inside the doorway around which either sugar or salt was scattered (pp. 4–6, 9–11, 14 and 20, Dep. of Gore, 2/26/63, Document 34 in 131/1962; p. 6 Dep. of Gore, 11/19/65, Document 35 in 163/1963). The sugar or salt was spilled from bags being moved at that time by other members of the crew (pp. 11, 13, 14 and 16, Dep. of Gore, 2/26/63, Document 34 in 131/1962; RM–2–1). After the accident, libellant worked overtime from 6:00 to 7:30 P.M., connecting ballast hoses (RM–2–3). Raul Kukk, Chief Officer of the S. S. "Globe Carrier," gave the order for shifting stores (p. 18, Dep. of Kukk), obtained a signed statement from a witness to the accident, Herbert C. Justice, and then prepared a Report of Personal Injury (pp. 24 & 29, Dep. of Kukk), to which the statement of the witness was attached (RM–2–1).

On January 18, 1962, the day following the accident, the libellant reported to the Chief Officer that he had tripped on the threshold and injured his left leg (Dep. of Kukk, p. 9). Libellant was sent to the hospital in Rotterdam, where the doctor reported that he had a hematoma of the left leg and requested him to return on January 22, 1962 (RM–2–2). On that date, libellant complained of lower back pain and the doctor recommended two weeks rest (RM–2–4).

Libellant returned to the United States aboard the S. S. "Globe Carrier" but did no work during the course of the voyage. The vessel arrived in Philadelphia on February 5, 1962, and two days later libellant submitted himself for treatment at Philadelphia (RM–10).

Libellant received out-patient treatment in Philadelphia from February 7, 1962, through April 9, 1962 (RM–10). On February 13, 1962, Dr. Burton Chance, Jr., orthopedic consultant, reported:

"On the 18th of January this year this patient fell on board ship and sustained rather severe bruises of the left thigh and calf, and following the fall developed pain in the left sacroiliac area with referred pain down the posterior thigh to the outer calf and foot. This pain is increased on coughing and straining, The ecchymosis has cleared up but he has pain on straight leg raising and he does not have good power in his gastroc.

"This man has sciatica, I believe, as a result of his fall. He should be put on rest, physical therapy, vitamin B, and is at present not fit for duty." (RM–10)

Libellant was hospitalized in Baltimore on April 10, 1962, and was treated for acute low back strain and discharged on April 24, 1962, "not fit for duty for fourteen days" (RM–11). During the period of hospitalization in Baltimore from April 10 to April 24, 1962, there was some limitation of forward flexion, an abnormal lumbo lordotic curve and tenderness over the spinous processes of L5–S1 and the lumbosacral area. Libellant was treated with traction and physical therapy and given medication (RM–11). Libellant was treated in Philadelphia from May 11 to June 12, 1962, when he was permitted to return to work on a trial basis (RM–10). On May 29, 1962, Dr. Chance reported:

"This patient continues to have low back pain to the left thigh, groin and calf. He has considerable pain on coughing and sneezing.

"I would suggest that he be fitted for a corset and that the corset have a sacroiliac pad added to it and that he continue with his physical therapy." (RM–10)

On June 12, 1962, libellant was given a fit-for-duty on a trial basis slip and on July 31, 1962, he joined the crew of the S. S. "Midland," on which he worked until August 15, 1962 (p. 6, Dep. of Gore, 10/16/65, Document 35 in 163/1963; p. 38, Dep. of Gore, 2/26/63).

The libellant suffered pain in his back when he joined the S. S. "Midland" (p. 15, Dep. of Gore, 10/19/65, Document 35 in 163/1963). Although he had no accident aboard the S. S. "Midland" (p. 35, Dep. of Gore, 2/26/63, Document 34 in 131/1962; p. 7, Dep. of Gore, 10/19/65, Document 35 in 163/1963), libellant testified that his back condition "came on worse" when he made a "hard left rudder" while standing wheel watch (Gore Dep., p. 35, 2/26/63, Document 34 in 131/1962). Between the time the libellant left the S. S. "Midland" and the time he joined the S. S. "Elemir" (his next ship), he was not involved in any accident involving his back (p. 8, Dep. of Gore, 10/19/65, Document 35 in 163/1963). Libellant received out-patient treatment in Philadelphia from August 17, 1962, for low back pain (R.Com–4), after which he was hospitalized in Baltimore from August 21 to August 31, 1962, for low back derangement (RM–12). During the hospitalization in Baltimore from August 21 to August 31, 1962, there was paraspinal muscle spasm and pain which was considered "possible sciatic irritation on the left" (RM–12). Libellant was discharged from this period of hospitalization in Baltimore "not fit for duty" and ordered to wear a back brace (RM–12). On September 21, 1962, libellant returned to Philadelphia; bed rest for four weeks was ordered (R.Com–4).

On October 16, 1962, libellant was examined by Dr. Martin L. Beller on behalf of impleaded respondents, Maritime Overseas Corporation and Ocean Cargo Ships, Inc. (N.T. 109). Dr. Beller re-

ported that the libellant complained of constant pain, worse on walking, standing and climbing steps (N.T. 111). During the course of his examination, Dr. Beller found tenderness in the L5–S1 area and tenderness in the left buttocks (N.T. 145). Dr. Beller was of the opinion that, at the time of his examination on October 16, 1962, libellant had "genuine difficulties" in the low back and left sciatic nerve with positive signs in regard to restriction of back movements, positive straight leg raising on the left side, and a small diminution of the left ankle jerk (N.T. 115, 134, 145). Dr. Beller was unable to determine when the condition he found on his examination in 1962 had arisen (N.T. 129–131).

Libellant was treated on an out-patient basis at Philadelphia from October 19 through November 30, 1962, when he asked for and received a "fit for duty" slip, but he returned six days later on December 6, 1962, and was sent to Baltimore (R.Com–4). Libellant was hospitalized in Baltimore for low back derangement from December 10, 1962, to January 6, 1963, when he was discharged "not fit for duty for one month" (RM–13). Libellant was seen in February and March 1963 in Philadelphia and declared "not fit for duty", but in April, when he returned to Baltimore, he requested a "fit for duty" slip and received it (p. 9, Dep. of Kaplan, Document 30 in 131/ 1962).

Libellant served on the S. S. "Elemir" from April 9 to June 12, 1963 (pp. 8–9, Dep. of Gore, 10/19/65, Document 35 in 163/1963). The libellant suffered pain in his back when he joined the S. S. "Elemir" (p. 16, Dep. of Gore, 10/19/65, Document 35 in 163/1963). Although the libellant had no accident while serving on board the S. S. "Elemir" (p. 9, Dep. of Gore, 10/19/65, Document 35 in 163/1963), he had trouble with his back and legs while on that ship and went to see a doctor in Port Said, Egypt where he was examined and marked "unfit for duty" (p. 9, Dep. of Gore, 10/19/65, Document 35 in 163/1963). Because of his back and leg difficulties, libellant

was compelled to leave the S. S. "Elemir" in New Orleans on June 12, 1963 (p. 8, Kaplan Dep., Document 30 in 131/1962). From June 14, 1963, to April 15, 1964, libellant was treated on an out-patient basis both at Philadelphia and Baltimore (RW–5; RW–6; RW–7; R.Com–6; R.Com–7; R.Com–8, Kaplan Dep., pp. 8 & 9). On December 12, 1963, libellant was examined by Dr. Richard Kaplan, orthopedic surgeon, on behalf of Clearwater, Oceanic, and Marine (p. 5, Kaplan Dep.). At the time of the examination by Dr. Kaplan, libellant complained of pain in the left low back. Dr. Kaplan found that libellant was able to forward bend to 100 degrees but that he failed to reverse his curve; he found a protective spasm, and lesser ability to straight leg raising of the left leg and a complaint of pain on straight leg raising on the left side, directly confirmed by testing (pp. 9, 12 & 13, Dep. of Kaplan). X-rays taken under Dr. Kaplan's direction showed some narrowing at the lumbosacral joint (Dep. of Kaplan, p. 14).

From June 12, 1963, until he joined the S. S. "Commander" on April 19, 1964, libellant was not involved in any accident involving his back (p. 11, Dep. of Gore, 10/19/65, Document 35 in 163/1963). On January 14, 1964, in Baltimore, libellant was marked "not fit for duty indefinitely" (RW–6), but on April 15, 1964, libellant was declared fit for duty (RM–4).

Libellant served on the S. S. "Commander" from April 19 to May 21, 1964 (p. 12, Dep. of Gore, 10/19/65, Document 35 in 163/1963). While on this vessel in April 1964, the libellant injured his left ankle when he caught his foot in a doorway (pp. 12 & 17, Dep. of Gore, 10/19/65, Document 35 in 163/1963). The libellant testified that he was treated for both his ankle and his back following this accident (p. 12, Dep. of Gore, 10/19/65, Document 35 in 163/1963).

Libellant received out-patient treatment for his ankle in Philadelphia from May 21 to June 8, 1964 (RW–8; RM–8), and was hospitalized for further treatment of the ankle in Baltimore on June

10, 1964 (RM–15; N.T. 154). While libellant was in the hospital, having been admitted on June 10, 1964, he had difficulty with low back pain (RM–15; N.T. 153–5). The record discloses no evidence of additional treatment for his back at this time, except that he was advised to continue wearing his brace and to do no heavy activity (RM–14). The libellant received further out-patient treatment for his ankle and for his back from June 24 to September 1, 1964, in Philadelphia (RW–8; RW–9).

Dr. Henry Sherk, orthopedic consultant, reported on July 30, 1964:

"This 48 year old man has been complaining of low back pain since 1962 when he fell on board a ship. The pain radiates in the posterior aspect of the left leg. Examination reveals moderate limitation of the lumbosacral spine, Straight leg raising is negative. The extensor hallucis longus is weak on the left. The patient should have a myelogram at this time. Possibility of a herniated vertebral disc is great." (RW–8)

Libellant had recovered sufficiently by September 2, 1964, to be given a fit-for-duty slip (L–1A).

Libellant served on the S. S. "Colorado" from September 21, 1964, until December 4, 1964 (pp. 6 & 7, Dep. of Gore, 10/19/65, Document 46 in 39/1965). The libellant was not required to submit to a physical examination in order to serve on the S. S. "Colorado" and there is no evidence that he made any misrepresentation in this regard (N.T. 14). While onboard the S. S. "Colorado" on November 6, 1964, when the ship was in port at Karachi, Pakistan, libellant stepped into a coil of wire on the deck and twisted his left leg and ankle (pp. 7–9, Document 46). This injury aggravated libellant's back condition, which had been bothering him during his voyage on the S. S. "Colorado" (p. 9, Document 46). Libellant was treated at the Seventh Day Adventist Hospital in Karachi, where he had been referred due to ankle complaints (par. 5 of Document 26 in 39/1965), for back injury. Libellant performed his regular duties onboard the S. S. "Colorado" on that vessel's return trip to Wilmington, N.C. (p. 9, Document 46 in 39/1965). He testified that his back condition was further aggravated by the "rolling and banging of the ship" (p. 12, Document 46 in 39/1965) during the exceptionally rough return passage across the Atlantic Ocean. On this same rough crossing, libellant lost his footing on the slippery deck of the rolling ship and cut his toe on a stanchion (p. 11, Document 46 in 39/1965). Libellant left the S. S. "Colorado" at Sunny Point, N. C., on December 5, 1964, prior to the termination of the foreign voyage, the Foreign Articles (which did not terminate until December 8, 1964) still being in effect (N.T. 20).

Libellant was admitted to out-patient care at Philadelphia on December 8, 1964, and was stated to be not fit for duty (L–1B). Philadelphia referred him to Baltimore and he was admitted to the Baltimore hospital on January 4, 1965 (L–1C). During this period of hospitalization, on the recommendation of Dr. LeVan, a myelogram was performed on January 14, 1965 (L–1C).

Libellant was discharged as not fit for duty from the Baltimore hospital on January 26, 1965, and readmitted on February 2, 1965, preparatory to exploratory surgery, which was performed on February 3, 1965, and resulted in the removal of a portion of the intervertebral disc between L5 and S1 (L–1D). Libellant made a very satisfactory recovery from surgery and started physical therapy on February 15, 1965, and was subsequently discharged from the hospital on February 19, 1965 (L–1D).

Libellant had sufficiently recovered from surgery by June 15, 1965, that he received a fit-for-duty slip from the Baltimore hospital on that date (L–1G).

On June 24, 1965, libellant entered the employ of respondent Venore as a

member of the crew of the S. S. "Chilore" as an able bodied seaman (N.T. 221). While onboard the S. S. "Chilore," the libellant experienced trouble with his back and was forced to leave that ship in order to seek medical care on July 9, 1965 (p. 14, Document 46 in 39/1965). During the time he worked on the S. S. "Chilore," the libellant cleaned tanks, swept up rust, climbed ladders, and pulled up buckets of "rust and dust and sweepings," which aggravated his back (p. 17, Document 46 in 39/1965). Libellant received treatments from the Philadelphia out-patient clinic commencing July 13, 1965 (L–11), until he was declared fit for duty on September 28, 1965 (p. 20, Document 46 in 39/1965). (L–1K). This was the posture of the case at the time of trial.

Gore v. Waterman v. Maritime, No. 39 of 1965 In Admiralty, and Gore v. Venore, No. 271 of 1965 in Admiralty

■ These two admiralty actions were consolidated for trial with the above-captioned four related admiralty actions and the six cases were tried together to the court on December 13–15, 1965. This part of the opinion considers only these two of the six related cases[5] since libellant has settled his claims in the other four, now seeking recovery only in Nos. 39 and 271 of 1965, and since some of the evidence received in the other four cases was not received in these two cases. Since the libellant in these two actions is asking for maintenance and cure which has allegedly been wrongfully withheld, as prompt as possible a determination is desirable, while the more complicated questions of liability as between the various respondents and impleaded respondents in the other four actions can await a second opinion with findings and conclusions, which is now in preparation.[6] The policy of the law favors the prompt determination of the libellant's claims.

Libellant is a seaman in the United States Merchant Marine, who entered the employment of Waterman as a member of the crew of the S. S. "Colorado" on September 21, 1964, under Foreign Articles as an able seaman. Waterman did not require libellant to submit to any physical examination before he became a member of the crew (N.T. 13–14).

On November 6, 1964, the libellant was examined by a doctor at the Seventh Day Adventist Hospital at Karachi, Pakistan, and was given treatment because of complaints made to the hospital only referable to his back (N.T. 16). Libellant was paid earned wages by the S. S. "Colorado" up to and including December 4, 1964 (N.T. 19). When libellant left the vessel on December 5, 1964, at Sunny Point, North Carolina, the foreign voyage of the S. S. "Colorado" was not completed and the Foreign Articles were not terminated (N.T. 20). The foreign voyage of the S. S. "Colorado" concluded and the Foreign Articles terminated in New York at midnight on December 8, 1964 (N.T. 20).

Libellant was an in-patient at the U.S. Public Health Service Hospital, Baltimore, Md., during the following periods:

1/4–1/26/65 (N.T. 21)

2/2–2/19/65 (Exhibits L–1C and L–1D)

He was fit for duty on June 15, 1965 (L–1G; see, also, pp. 59 ff. of LeVan Deposition, being Document 20 in 163/1963, received in evidence at N.T. 96–97).

■ Libellant has not sustained his burden of proving that the disability of July to September 1965 was substantially caused by the accident of November 1964.

■ On June 22, 1965, Waterman sent to libellant's attorney a check in the sum of $250 (N.T. 22) on account of any maintenance which he might claim to be due from respondent (Exhibits L–3A to L–3H). Libellant's base pay at the time he served on the S. S. "Colorado" was

---

5. The six related actions are: No. 131 of 1962, No. 163 of 1963, No. 449 of 1963, No. 279 of 1964, No. 39 of 1965, and No. 271 of 1965.

6. This second opinion, with findings and conclusions, will be filed later. [The opinion referred to appears infra, p. 120.]

$369.17. Maintenance and cure is payable at the rate of $8.00 a day. The cost of libellant's transportation from Wilmington, North Carolina, to Philadelphia, Pa., in December 1964 was $37.74 (N.T. 221).

Libellant had a pattern of repeated back pains from 1954 to the time of his operation in February 1965 and at least one exacerbation (defined at N.T. 117 as a separate attack) after this operation (N.T. 116–7). His lower back (L5–S1 level) was such that an exacerbation could be caused by a bending or a moving act such as putting on his shoes, as well as by trauma (N.T. 117–8). Such exacerbations occurred in November 1964 on the S. S. "Colorado" (RW–3 and N.T. 70), at which time libellant twisted his leg when he stepped in loose wire located at the foot of a ladder (pp. 7–9 of Document 46), and in late June or July 1965 as a result of pulling up buckets of rust and dirt on the S. S. "Chilore" (pp. 14–20 of Document 46).

Libellant has sustained his burden of showing that it is more probable than not that he in fact suffered disability, which continued until June 15, 1965, aboard the S. S. "Colorado" and respondent Waterman has not shown that it is more probable than not that any of the defenses recognized by the Supreme Court of the United States to claims for maintenance and cure are applicable in this case. See Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (1949); Vaughan v. Atkinson, 369 U.S. 527, 530, 531, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962). The respondent Waterman has not sustained its burden of establishing that it is more probable than not that the accident of January 1962 on the S. S. "Globe Carrier" was a substantial factor in causing the libellant's disability from December 1964 to June 15, 1965, when he next became fit for duty. Although Dr. Kaplan's testimony is consistent with the possibility that this disability from December 1964 to June 1965 resulted from the January 1962 accident, it is noted that Dr. Kaplan emphasized that: (1) the first evidence of neurologic weakness was shown along the extensor hallucis longus in July 1964, prior to the November 1964 accident but long after the January 1962 accident and also after the accident on the S. S. "Commander" in April 1964 (see RM–8A, RW–8 and p. 38 of Document 30); and (2) although there was in 1962 "discogenic disease. That doesn't mean herniated disc" (p. 30 of Document 30). Dr. Kaplan's findings were principally concerned with libellant's condition prior to November 1964 and he had not seen the libellant after December 1963 (pp. 5 and 23 of Document 30).

The trial judge was most impressed by Dr. Beller's testimony and it is noted that Dr. Beller saw the libellant in October 1962 (N.T. 109), which was more than a year prior to the examination by Dr. Kaplan.

Similarly, Dr. Sharrett testified that the 1962 accident was not the final exacerbation of libellant's back condition, using this language at page 27 of his deposition[7] (Document 34 in 163/1963, received in evidence at N.T. 55–56):

"Q So then the final exacerbation, if there was any worsening of a pre-existing condition, was the date of the accident aboard the vessel in Holland, is that correct?

"A No, sir; I can't agree with that because he stated to me, and I am again quoting from Dr. Sharrett deposition exhibit No. 1, he stated that he did improve afterwards sufficiently that he was able to return to his ship in September of 1964."

---

7. Although there was considerable additional examination of Dr. Sharrett, he stated consistently that libellant's back condition was in a state of remission at various times between 1962 and 1964, but there were exacerbations during 1964. See, also, Summary of medical testimony at pages 2–6 of Libellant's Supplemental Memorandum (Document 53 in 39/1965).

Although Waterman contends in its trial brief (pp. 13–14 of Document 56), submitted on the first day of the trial, that the release (RW–10) and covenant not to sue (RW–11) executed by libellant in favor of Maritime on October 11, 1965, make any award to libellant in these actions a "double recovery," the record before the court does not sustain such contention and Waterman has not included any Request for Finding or Conclusion on the point (see Document 55 in 39/1965). When the Civil Actions against Maritime, Oceanic and Waterman (Civil Actions 31393, 34004 and 38780), which were related to the above admiralty actions against these respondents, were called for jury trial in early October 1965, a settlement was reached and the Civil Actions were marked terminated by agreement of the parties. See pp. 2–16 and 22–23 of Document 31 in No. 131 of 1962, being transcript of a conference in the chambers of the trial judge on October 11, 1965.[8] The above-mentioned release and covenant not to sue were the reason for libellant's agreeing to the dismissal of the Civil Actions and these documents make clear that libellant was only waiving any claim for maintenance for the period prior to July 31, 1962. The law favors settlements of the type shown by this record, and the foregoing contention of Waterman is rejected.

Respondent Waterman failed to pay libellant maintenance and cure concurrently with the need (see L–3A to L–3H) and required libellant to secure a lawyer and institute this action.[9] Libellant is entitled to a reasonable counsel fee. See Vaughan v. Atkinson, 369 U.S. 527, 530–531, 82 S.Ct. 997 (1962).

Libellant is granted 30 days within which to file an affidavit supporting his claim for counsel fee in a specific amount and respondent will be granted 30 additional days to file counter-affidavits if counsel cannot agree on the amount of such fee.

Rulings on Requests for Findings of Fact and Conclusions of Law Concerning Waterman (Documents 54 & 55 in No. 39 of 1965)

A. *Requested Findings of Fact*

1. Paragraphs 1–4, 9, 10, 12 and 14–18 of Libellant's Requests (Document 54) are affirmed.

Requests 8, 11, 13, 19 and 25 are affirmed as modified, as follows: in 8, the words "his back condition" are substituted for all words after "by" in the top line on page 3; in 11, the last letter (s) is deleted from the second word and the first parenthesis is deleted; in 13, the words "prior to surgery" are inserted after "care"; in 19, the words "insofar as" are substituted for the first two words of the third line; and in 25, the words "to June 15, 1965" are inserted after "disability."

Requests 5, 6 and 26 are denied as stated.

2. Paragraphs 1–3 ("Globe" substituted for "Gulf"), 5 and 7 of Respondents' Requests (Document 55) are affirmed.

Paragraphs 4, 6, and 8–12 of Respondents' Requests are denied. Request 6 must be denied as stated. If the quotation means that libellant did not go the the Baltimore Public Health Hospital on

---

8. At this conference, it was agreed that the trial of the above-captioned Admiralty Actions, which commenced December 13, 1965, was to be to the court (p. 23 of Document 31 in 131/1962).

9. The Public Health Service records, which were available to respondent during the period December 1964 through June 1965, made clear that libellant was suffering such serious leg and back pains that a disc operation was being seriously considered (L–1B, RM–8 and 8A, L–1C) and would take place (L–1C). After the operation of February 3, 1965, such records made clear that he was not fit for duty until June 15, 1965 (L–1D—L–1F).

or before September 1, 1964, it may be correct, but the record shows that he went to that hospital on September 2, 1964, was found "asymptomatic" and "FFD re back." See Exhibit L–1A. As to Requests 10 and 11, the libellant complained that his left leg was "real sore," as well as "I get Charlie Horses" (L–1B). On December 28, 1964, libellant complained to the Philadelphia Public Health Clinic (L–1B):

> "Left leg pain no better. Now the right leg is also becoming involved. Pain is throbbing—just like a toothache."

The libellant was sent to the Baltimore Public Health Hospital and a Memorandum sent from the Philadelphia Clinic to that hospital covering his case, dated December 31, 1964, started off with these words (RM–8):

> "Mr. Edgar L. Gore, 46 years of age, will report to you for re-evaluation of his low back syndrome on January 4, 1965."

Pages 9 and 10 of the Deposition referred to at the end of Request 11, being Document 46, makes clear that libellant repeatedly stated that his back was injured and was hurting him when he left the S. S. "Colorado."

B. *Requested Conclusions of Law (above-mentioned Documents 54 and 55)*

1. Paragraphs 1 and 3–5 of Libellant's Requested Conclusions are affirmed. Paragraph 8 is affirmed, substituting for the words from "the" to "as," inclusive, the word "a."

2. Paragraph 3 of Respondents' Requested Conclusions is affirmed and all other Requested Conclusions are denied as stated.

▉▉▉ Libellant is entitled to recover the following from Waterman:

Maintenance at $8.00 per day for a net of 154 days, being 193 days from 12/5/65 to and including 6/15/65 less the above specified 39 days when he was in the hospital, or

| | | |
|---|---|---|
| $8.00 X 154 | $1232.00 | |
| Less $250. (amount received on account) | 250.00 | |
| Total Maintenance | | $ 982.00 |

Transportation, Wilmington, N. C., to Philadelphia, Pa. — 37.74

Wages to the end of the voyage, 12/5 to 12/8/64 — 49.20

Interest on $982. of maintenance for one year at 5% (see Ursich v. DaRosa, 328 F.2d 794, 798 (9th Cir. 1964)) — 49.10

Interest on $86.94 for 18 months at 5% per year — 6.51

Costs (see Document 51 in 39/1965 [10])

Reasonable counsel fee (amount to be determined)[11]

Total — $1,124.55

---

10. In view of the attached letter of December 16 from counsel for libellant, indicating duplicated items in this Document 51 and Document 16 filed in 271/1965, counsel are asked to submit a stipulation as to the taxable costs allocable to each case or libellant may submit an amending letter to be attached to each Bill of Costs.

11. Counsel for respondent is asked to submit his position on the claim for attorney's costs forwarded with the attached letter of December 16, mentioned in the preceding footnote.

As stated above, libellant is a seaman in the United States Merchant Marine and Venore owned, operated, and/or controlled the S.S. "Chilore," engaged in coastwise, inter-coastal and foreign commerce.[12]

On or about June 24, 1965, libellant entered the employ of Venore as a member of the crew of the S.S. "Chilore" under Shipping Articles. On June 25, 1965, libellant signed and filed with Venore a physical examination report mentioning his right inguinal hernia in 1958 and that a disc had been removed from his back in 1965 (L-6). As stated above at page 115, libellant suffered an exacerbation of his lower back condition (L5-S1 level) in late June or early July 1965 while on the S.S. "Chilore" as a result of pulling up buckets of rust and dirt. On July 8, 1965, when the S.S. "Chilore" was docked at Houston, Texas, he applied for discharge from the S.S. "Chilore" so that he could have a physical checkup due to the back pain he was suffering at that time (L-7 and L-1H). After treatment at the U. S. Public Health facility in Philadelphia (L-1H, L-1I and L-1J), he was fit for duty on September 28, 1965 (L-1K).

Libellant was not fit for duty from July 9, 1965, to September 28, 1965. Libellant has sustained his burden of showing that it is more probable than not that he in fact suffered disability, which continued until September 28, 1965, aboard the S.S. "Chilore" and respondent Venore has not shown that it is more probable than not that any of the defenses recognized by the Supreme Court of the United States to claims for maintenance and cure are applicable in this case. See Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707 (1949); Vaughan v. Atkinson, 369 U.S. 527, 530, 531, 82 S.Ct. 997 (1962). Venore has filed no impleading petitions.

Respondent Venore's failure to pay maintenance and cure concurrently with the need, with knowledge of libellant's recent disc removal operation and of his disability (L-6 and 7), together with the availability of Public Health Service records showing such continuing disability (L-1H to L-1K, incl.), makes it liable for a reasonable counsel fee. See Vaughan v. Atkinson, supra, at 530-531, 82 S.Ct. 997; Smith v. Seitter, 225 F.Supp. 282, 287 (E.D.N.C.1964); and pages 11 and 12 of Libellant's Supplemental Memorandum (Document 53 in 39/1965). The fact that Venore in good faith believed that the ultimate responsibility for maintenance and cure rested with Maritime is no justification for its failure to pay maintenance and cure where the disability commenced on Venore's vessel. See, for example, ruling of Chief Judge Clary at page 4 of transcribed Oral Opinion of 5/24/66 in Gooden v. Texaco, Inc., D.C., 255 F.Supp. 343, where this language was used:

> "Every bit of disability, under my findings of fact, stems from the fall on the Texaco 'Mississippi.' Under historic admiralty practice, however, where a person comes off a ship because of any disability, it is the duty of the ship from which he leaves to pick up the maintenance and cure responsibility. * * *"

See, also, Robinson on Admiralty, p. 292, and 1 Norris, The Law of Seamen (2d Ed.), § 568, p. 644.

The schedule for filing affidavits on the subject of such counsel fee shall be the same as that stated above at page 116 for the suit against Waterman, if counsel cannot agree on the amount of such fee.

Libellant's Requests (Document 17 in 271/1965) for Findings numbered 1-9 and 11-16 are affirmed, with deletion of the word "trial" in 4 and of all words

12. The evidence in No. 271 of 1965, being the case against Venore, starts at N. T. 221 (Document 33 in 131/1962).

after "fee" in 16. Requests for Conclusions numbered 1–5 are affirmed. Libellant is entitled to recover the following from Venore:

| | |
|---|---:|
| Maintenance at $8.00 per day for 81 days (7/9/65 to 9/28/65) | $648.00 |
| Interest on $648.00 at 5% per year for 9 months | 24.30 |
| Transportation ($113.00) and interest at the rate of 5% per year (interest at this rate on $113 for a period of 10 months = $4.71) | 117.71 |
| Costs (Document 16 in 271/1965, see footnote 10, supra) | |
| Reasonable counsel fee (amount to be determined, see footnote 11, supra) | |
| Total | $790.01 |

———◆———

Certain Rulings on Evidence are contained in Exhibit A attached hereto.

The letters from counsel dated April 7 and 12 have been attached to Document 52 (Memorandum of Respondents Waterman and Venore) and Document 53.

EXHIBIT A TO OPINION OF JUNE 1, 1966, IN GORE V. MARITIME OVERSEAS CORPORATION ET AL. (NOS. 131 of 1962, 163 & 449 of 1963, 279 of 1964, AND 39 & 271 of 1965)

RULINGS ON EVIDENCE

1. Deposition of Raul Kukk, taken October 2, 1963, offered at N.T. 81, objected to at N.T. 83 ff., was received in evidence at N.T. 194–5 (see transcript of October 11, 1965, being Document 31 in 131/1962, p. 27). Since the deposition is admissible, Exhibits RM2–1 to RM2–4 marked at this deposition are admissible. If counsel had objected to the authenticity of the exhibits when the deposition was taken, such authenticity could most probably have been established by the time of trial, so that any objection to authenticity was waived; see N.T. 247.

2. Deposition of libellant taken by counsel for Maritime, being Document 46 in 39/1965, and offered in evidence by libellant at N.T. 23–24 and 226. The objections of Waterman and Venore to this deposition (N.T. 23 ff. and 225) are overruled. The record contains a notice of deposition (RM–1) mailed October 13 for the deposition on October 19. No evidence was offered that this notice was not promptly received by counsel for respondent on October 14. By failing to object promptly to Mr. Kildare's notice of deposition (RM–1), to move for an extension or shortening of the time within which the deposition was to be taken under F.R.Civ.P. 30(a), or to move for an order that the deposition not be taken in accordance with such notice under F.R. Civ.P. 30(b), respondent waived any right of cross-examination as to the matters covered in the deposition filed as Document 46 in 39/1965. See Wong Ho v. Dulles, 261 F.2d 456, 460 (9th Cir. 1958); 4 Moore's Federal Practice (2d Ed.) ¶ 30.05; 26A C.J.S. Depositions § 68, p. 393.

Although counsel for respondent sent counsel for libellant a copy of a letter dated October 13, 1965, stating that it would not be possible for him to be present at another deposition of the libellant to be conducted 15 minutes earlier on the same day (October 19),

due to leaving Philadelphia for a meeting in Chicago on the evening of October 19 (RW–2), counsel for respondent did not ask that that previously scheduled deposition be delayed but only stated in that letter that he would be unable to attend the deposition, and then added: "We do request, however, that a copy of the transcript be ordered for our use." This is insufficient to constitute a timely objection to the deposition noticed by RM–1, in view of the failure of any admissible evidence indicating that counsel for respondent at any time objected in writing to the deposition noticed by RM–1, which is transcribed as Document 46. Cf. Local Rule 13, providing that the court will refuse to consider parol evidence of any stipulation of counsel.*

■■■ 3. Hospital Record of the Seventh Day Adventist Hospital, Karachi, Pakistan, dated 6/11/64 (RM–4), offered at N.T. 103 and ruling reserved at N.T. 106. Objection of Mr. Byrne to the receipt of RM–4 is sustained, due to lack of proper proof of the record.

## ON SUPPLEMENTAL OPINION SUR PLEADINGS AND PROOF

This opinion supplements the one filed June 1, 1966, which upheld the claims of the libellant against Waterman (39/1965) and Venore (271/1965), and should be read in conjunction with that opinion.[1] As was pointed out in the June 1, 1966, opinion, libellant, Edgar L. Gore, is a seaman in the United States Merchant Marine with a long history of back trouble. At various times from 1954 to 1965, the libellant was disabled due to his back condition. The respondents in Nos. 163 and 449 of 1963 and No. 279 of 1964 are owners of the ships S. S. "Midland," S. S. "Elemir," and S. S. "Commander," respectively, each of which the libellant was forced to leave because of difficulties with his back. These three respondents claim that the cause of all of libellant's back difficulties can be traced directly to an injury sustained by him in 1962 while serving aboard the S. S. "Globe Carrier," owned and operated by Maritime. Accordingly, Maritime was impleaded in Nos. 163 and 449 of 1963 and No. 279 of 1964. Preliminarily, it should be noted that the claim of Gore against Maritime (131/1962) was withdrawn (N.T. 235) and that the respondents in Nos. 163 of 1963, 449 of 1963 and 279 of 1964 have paid all maintenance claimed by the libellant in those actions. The 1965 actions have been decided by the opinion of June 1, 1966.

### Claims in Nos. 163 of 1963, 449 of 1963 and 279 of 1964 in Admiralty [2]

The narrow issue for decision here is whether the respondents or the impleaded respondents [3] are responsible for the maintenance which has been paid to the libellant by the respondents.

■■■ The record establishes, and the trial judge accordingly finds, that Maritime is responsible on the basis of both negligence and unseaworthiness for substantially causing the accident onboard the S.S. "Globe Carrier" on January 17,

---

\* It is noted that there is evidence, independent of this deposition, of the accident of November 1964 on the S. S. "Colorado." See RW–3 and N. T. 70.

1. A full statement of facts concerning libellant's back trouble is contained in the opinion filed June 1, 1966. In addition, it should be noted that the same abbreviations used in that opinion will be used in this one and particular reference should be made to footnote 2 of the earlier opinion.

2. The evidence in these cases was not exactly the same as that received in Nos. 39 and 271 of 1965, but virtually all the Public Health reports and the doctors' depositions were received in all cases.

3. The impleaded respondent in each of these three cases (Nos. 163 and 449 of 1963 and 279 of 1964) is Maritime.

1962.[4] Although this accident has been described previously (see fn. 4, infra), the record clearly establishes the following additional relevant facts: (1) the stores, including the sugar and salt scattered about the "log" on which the libellant slipped, had been moved across the sill of the bulkhead doorway for at least two hours before the libellant started to work (Dep. Kukk, pp. 18–20); (2) the "log" was not completely square and had been "chiseled out with a hatchet, or something" (p. 15, Document 34 in 131/1962); (3) the sill was 18 inches high and the libellant had to step over it onto the "log" while looking over the two cartons of canned milk he was carrying, which came up to a level just below his nose (pp. 6 & 10, Document 34 in 131/1962); (4) the deck was dry and the libellant's shoes were not slippery (p. 8, Document 34 in 131/1962).

The entire record (including both the above findings and those set forth in the opinion of 6/1/66, Document 57 in 39/1965) requires the finding that the placing of the log just inside the door sill over which the libellant had to step and the failure to keep the area around the doorway free from loose sugar or salt constituted negligence, as well as unseaworthiness, and this negligence and unseaworthiness were substantial factors in causing the libellant's fall.

 Since Maritime is responsible for the accident onboard the S.S. "Globe Carrier," it must pay for any harm substantially caused by the above negligence and unseaworthiness; cf. Restatement of Torts 2d, §§ 431 & 454. The trial judge also finds that Maritime has failed to sustain its burden of showing that it is more probable than not that any accident prior to the accident of January 17, 1962, on the S.S. "Globe Carrier" was a substantial factor in causing any of the periods of disability of the libellant arising after January 1, 1962. Nor is it significant that the libellant did not reveal his prior medical history relating to his back at the time he was examined by Dr. Burden preparatory to joining the crew of the S.S. "Globe Carrier" (see p. 110 of the opinion of 6/1/66), particularly since the libellant thought himself physically fit and testified that his previous ailments at the time of the examination "hadn't bothered me for years" (p. 15, Document 35 in 163/1963). See Sobosle v. United States Steel Corporation, 359 F.2d 7 (3rd Cir. 4/19/66), where, after discussing the nature of the special relationship between the seaman and the shipowner which gives rise to the shipowner's obligation to provide maintenance and cure, the court used this language:

"So it has been said that whether a seaman breached his duty to make it known to his prospective employer that he is unfit for service, and thus lost the right to maintenance and cure, will be determined by a subjective view of what he thought appropriate." [citing cases in footnote 8]

 After a consideration of all the evidence in the case, including the medical testimony of Dr. Beller,[5] Dr. Kaplan, Dr. Sharrett and Dr. LeVan, the trial judge concludes that the weight or fair preponderance of the evidence establishes that the accident of January 1962 aboard the S.S. "Globe Carrier" was the substantial factor in causing the two periods of the libellant's disability which began in August 1962 and June 1963 while he was serving on the S.S. "Midland" and the S.S. "Elemir," respectively, and the trial judge further finds that no fault of Clearwater (in the case of

4. The accident is described in part on page 110 of the opinion filed June 1, 1966, which is Document 57 in 39/1965. Any additional findings bearing on the accident which have relevance to the issues to be decided here are included in this supplemental opinion.

5. As noted at page 115 of the 6/1/66 opinion (document 57 in 39/1965), the trial judge was "most impressed by Dr. Beller's testimony."

the S.S. "Midland") or Oceanic (in the case of the S.S. "Elemir") was a substantial factor in causing such periods of disability. The weight or fair preponderance of the evidence does not establish that the libellant was fit for sea duty in June 1962 or April 1963 (see, also, pp. 111 and 112 of opinion of 6/1/66).[6] The fact that representatives of the U.S. Public Health Service have certified that a seaman is fit for duty does not preclude a fact finder from concluding to the contrary. Cf. Brett v. J. M. Carras, Inc., 203 F.2d 451, 454 (3rd Cir. 1953); Lipscomb v. Groves, 187 F.2d 40, 46 (3rd Cir. 1951); Labenz v. National Shipping and Trading Corporation, 153 F.Supp. 785, 786 (E.D. Pa.1957). It is noted that Dr. Beller never specifically testified that there was an exacerbation of the back condition while libellant was on either of these vessels, whereas he did refer to the accident on the S.S. "Commander" in 1964 (N.T. 116A).

 As to the case of Marine (owner of the S. S. "Commander") in No. 279 of 1964, it has not established its burden of proving that it is more probable than not that the disability commencing in May of 1964 (see p. 112 of opinion of 6/1/66) was substantially caused by the January 1962 accident aboard the S. S. "Globe Carrier," as opposed to the accident of April 1964 which the libellant had aboard the S. S. "Commander." For the following reasons, the trial judge

finds that the April 1964 accident aboard the S. S. "Commander" was the substantial factor in causing the libellant's period of disability commencing May 21, 1964, and ending September 2, 1964, when the libellant was declared fit for duty (L–1A):

(a) The time interval between the accident on the S. S. "Globe Carrier" in January of 1962 and April 1964, as well as the extensive medical care given the libellant after he left the S. S. "Elemir" on June 12, 1963, and the comments of Dr. Hirschhorn (p. 3, RM–14)[7] recorded at the time he examined the libellant on April 15, 1964, indicate that the libellant was in a period of remission on that date as that term was defined by Dr. Beller (N. T. 117).

(b) There was a definite incident aboard the S. S. "Commander" which was sufficient to constitute an exacerbation as defined by Dr. Beller (see, particularly, Dr. Beller's comments about the incident at N. T. 116A, 120, 121). This incident occurred when the libellant tripped and fell because he got his "foot caught in a doorway * * * on an extra piece of steel that had been added on that * * *." (p. 17, Document 35 in 163/1963). Although the libellant testified that he only hurt his ankle when he tripped (p. 12, Document 35 in 163/ 1963), he further testified that he "had pain in my back and leg all the time I was on the Commander * * *"[8]

---

6. This finding makes it unnecessary to discuss the incident aboard the S. S. "Midland," where, the libellant testified, his back bothered him more when he made a "hard left rudder" (see opinion of 6/1/66, p. 111), since the record establishes that the exacerbation caused by the accident of January 17, 1962, aboard the "Globe Carrier" continued without remission through the libellant's service aboard the S.S. "Elemir."

7. "Feels much improvement-Gore had great improvement in symptoms. Rem 85% of full—little if any pain SLRs-ess neg now. Double leg raising neg. Neural-neg.—P revaluation given." (RM–14, p. 3).

8. Apparently the accident aboard the S. S. "Commander" occurred on April 19, 1964 (RM–15), which was the very day libellant joined the S. S. "Commander." This would indicate that the libellant's testimony is consistent with the finding that the April 1964 accident amounted to an exacerbation which caused the libellant pain throughout his service on the "Commander," since four days previously, on April 15, 1964, the examining physician in Baltimore, Dr. Hirschhorn, found great improvement in symptoms (see fn. 7, supra).

and that on leaving the "Commander" he was treated for his ankle and his back (p. 12, Document 35 in 163/1963). The physician who examined libellant in Baltimore after his service aboard the S. S. "Commander" diagnosed libellant's difficulties as follows: "1. Resolving hematoma, left leg 2. Left foot pain, etiology unknown 3. Chronic low back pain." (p. 2, RM–15).

(c) Dr. Kaplan testified that in his opinion the first neurological weakness exhibited by the libellant was at the time of Dr. Sherk's report on July 30, 1964 (RW–8; see, also p. 113 of the opinion of 6/1/66), and this was manifested by a weakness of the extensor hallucis longus on the left (pp. 37–38, Document 30 in 131/1962). Dr. Sherk felt "the possibility of a herniated vertebral disc [was] great" (RW–8) at the time of his examination, which was just after libellant's service on the S. S. "Commander" but more than a year after libellant had left the S. S. "Elemir."

 The entire record and the medical testimony in these cases establishes that libellant since at least 1962 has had periods of exacerbation to his back followed by periods of remission. The record also establishes that it is impossible to pin-point the origin of libellant's back condition.[9] Under these circumstances, the trial judge concludes that where the preponderance of the evidence indicates that an exacerbation, or separate attack, has occurred while the libellant was aboard a ship, the owner of that ship is liable for libellant's maintenance, at least until the record clearly establishes by the preponderance of the evidence that a period of remission sufficient to make him fit for duty has commenced.

 It should be pointed out that, since it is impossible to state when the libellant's back condition originated, or when herniation of the disc in his back occurred,[10] the accident on January 17, 1962, aboard the S. S. "Globe Carrier" can only be characterized with certainty as an exacerbation. All bad backs are not caused by herniated discs, nor do all bad backs require surgery to effect recovery.[11] In the case of the libellant's bad back, exacerbations could have occurred before or after herniation, and herniation itself could have taken place any time prior to February 3, 1965, which was the date that a herniated disc was removed from the libellant's back. As indicated in the June 1 opinion, during the periods of remission of libellant's back condition, such as the period prior to January 1962 and the period immediately after April 15, 1964, libellant had obtained the maximum cure possible [12] and hence the injured seaman was not entitled to maintenance and cure.[13] The

---

9. See, particularly, Dr. Beller's testimony at p. 116A, where he said, "My opinion is that I am unable to give a specific opinion as to when this back difficulty arose."

10. Herniation in this case was clearly indicated for the first time when the myelogram was performed on January 14, 1965 (L–1C), and the doctors recommended exploratory surgery. It should be noted that exacerbation can occur without prior herniation (see Dr. Kaplan's explanation of exacerbation of sciatica at p. 34 of Document 30 in 131/1962). Exacerbation can also occur after a disc has become herniated and a disc can become only partially herniated (see p. 47, Document 30 in 131/1962).

11. See, particularly, Dr. Kaplan's comments at pp. 50–57, Document 30 in 131/1962. Back conditions such as sciatica (Dep. Kaplan, p. 34) can be treated in a variety of ways and do not necessarily require surgery.

12. Cf. Gardner v. Sinclair Refining Co., 227 F.2d 958 (3rd Cir. 1955); Luth v. Palmer Shipping Corp., 210 F.2d 224 (3rd Cir. 1954), cert. den. 347 U.S. 976, 74 S.Ct. 788, 98 L.Ed. 1116 (1954).

13. It should be noted that the certification by a representative of the U. S. Public Health Service that a seaman is fit for duty (the issuance of a so-called "fit for duty slip"), merely establishes a rebuttable presumption of fitness. See

trial judge finds that the first time the libellant was fit for duty after his accident on the S. S. "Globe Carrier" was April 15, 1964.

 After January 1962, the libellant did not obtain maximum cure until he experienced the period of remission which has been found to have occurred in April of 1964,[14] just prior to his service on the S. S. "Commander." Under these circumstances, the respondents Clearwater,[15] and Oceanic [16] became liable to the libellant for maintenance covering the periods of disability following the libellant's service on the S. S. "Midland" and the S. S. "Elemir," respectively, because the libellant became ill or disabled while on those ships. But Maritime [17] is ultimately liable for maintenance from the time the libellant left the S. S. "Globe Carrier" in February of 1962 [18] until April 15, 1964, because the libellant had not obtained the maximum cure possible until that latter date. Cf. Koslusky

v. United States, 208 F.2d 957 (2nd Cir. 1953); Pyles v. American Trading & Production Corp., 244 F.Supp. 685 (S. D. Tex. 1965). Under these circumstances, the libellant has the right to obtain maintenance from either the respondents [19] or the impleaded respondents in Nos. 163 and 449 of 1963, since their liability for maintenance here is coextensive. But though liability is coextensive, Maritime is primarily liable here because it is the original tortfeasor in this case, while Clearwater and Oceanic are secondarily liable,[20] Jones v. Waterman S. S. Corporation, 155 F.2d 992 (3rd Cir. 1946). Therefore, the maintenance paid by Clearwater for the period of libellant's disability following his service aboard the S. S. "Midland," [21] and the maintenance paid by Oceanic for the period of the libellant's disability following his service aboard the S. S. "Elemir" [22] can be recouped from the original tortfeasor, Maritime,[23] Jones v. Waterman S. S. Corporation, supra.

Brett v. J. M. Carras, Inc., 203 F.2d 451, 454 (3rd Cir. 1953); Lipscomb v. Groves, 187 F.2d 40, 46 (3rd Cir. 1954); cf. Sobosle v. United States Steel Corporation, supra.

14. The libellant was declared fit for duty on April 15, 1964 (RM–4). Also see findings in sub-paragraph (a), p. 122, supra, under the discussion of the liability of Marine for maintenance after the libellant's service on the S. S. "Commander," and pp. 123 and 124, supra.

15. Respondent in 163/1963 and owner of the S. S. "Midland."

16. Respondent in 449/1963 and owner and/or operator of the S. S. "Elemir."

17. Impleaded respondent in Nos. 163 and 449 of 1963 and owner of the S. S. "Globe Carrier."

18. See p. 8, Document 57 in 39/1965.

19. It is noted that the libellant is not claiming from the respondent in 163/1963 (owner and operator of the S. S. "Midland") maintenance for the period of dis-

ability following his service on the S. S. "Elemir," so that no evidence of this possibility appears in the record.

20. The secondary liability of respondents in these two cases is comparable to the secondary liability of the railroad in Seely v. City of New York, 24 F.2d 412 (2nd Cir. 1928).

21. See receipts for maintenance totaling $1272 paid by Clearwater (R.Com–1).

22. See N. T. 242, where it was stipulated by counsel that the amount of maintenance paid by Oceanic was $2456.

23. Although the libellant's back condition recurred while the libellant was aboard the S. S. "Midland" and again recurred aboard the S. S. "Elemir," it was substantially caused by his accident aboard the S. S. "Globe Carrier." The weight of the evidence does not make it more probable than not that a period of remission had intervened between the time of the accident on the S. S. "Globe Carrier" and April 15, 1964, when the libellant was declared fit for duty.

The weight of authority supports the conclusion that the respondents in these cases (163 and 449 of 1963) can recoup from the original tortfeasor, Maritime, any losses which the former sustained on account of the negligence or unseaworthiness of the latter. The Jefferson Myers, 45 F.2d 162 (2nd Cir. 1930); Seely v. City of New York, 24 F.2d 412 (2nd Cir. 1928); Martinez v. Permanente S. S. Corp., 237 F.Supp. 380 (D. Hawaii 1965); Thibeault v. Boston Towboat Co., 28 F.Supp. 152 (D. Mass. 1939); Pure Oil Company v. Geotechnical Corp. of Delaware, 129 F.Supp. 194 (E. D. La. 1955).

Therefore, the fact that Clearwater and Oceanic paid libellant maintenance concurrent with the need does not foreclose them from claiming over against Maritime, who has been found in this case to be the original tortfeasor, since the libellant could recover maintenance and cure from the owner of any ship on which he suffered disability in the absence of one or more of the recognized defenses to such a claim. See Farrell v. United States, 336 U.S. 511, 516, 69 S. Ct. 707, 93 L.Ed. 850 (1949). The fact that libellant may not have been fit for duty when he was employed by such a ship [24] because of the negligence or unseaworthiness of a former vessel, which is a substantial cause of his disability, is not such a defense. Farrell v. United States, supra; cf. Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1938).[25]

 This result is consonant with the policy that an injured seaman should receive maintenance and cure concurrent with the need, Farrell v. United States, supra, and should not be subjected to economic pressure, Luth v. Palmer Shipping Corp., 210 F.2d 224 (3rd Cir. 1954). If a shipowner could resist a claim for maintenance and cure by the libellant on the basis that a previous tortfeasor was responsible, the policy of Farrell and Luth v. Palmer, Shipping Corp., supra, would be frustrated.

 The most difficult question in this case is whether or not Maritime must pay counsel fees claimed by the respondents in Nos. 163 and 449 of 1963. If a shipowner refuses a seaman's claim for maintenance and it is subsequently found that maintenance is in fact owed, counsel fees are awarded the seaman in addition to the normal award of maintenance and cure, Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997 (1962). Such counsel fees run with the award of maintenance irrespective of the reasonableness of the grounds upon which the shipowner refused to pay, Jordan v. Norfolk Dredging Company, 223 F.Supp. 79 (E. D. Va. 1963). The Third Circuit has held that counsel fees are payable in maintenance and cure actions regardless of good faith reasons for withholding such payments, Sims v. United States of America War Shipping Adm'n., 186 F. 2d 972 (3rd Cir. 1951), cert. den. 342 U.S. 816, 72 S.Ct. 31, 96 L.Ed 617. The awarding of counsel fees in all these cases is a corollary of the strong policy of the admiralty law favoring prompt payment of maintenance claims. This policy is well stated by Judge Michie in *Jordan* (supra 223 F.Supp. at p. 83):

"In other words, attorneys' fees have been made a routine element of damages to be paid any seaman who wins a contested maintenance and cure suit. Apparently this added and unusual onus is put on the shipowner's shoulders in maintenance and cure actions in an attempt to equalize the always poor and usually ignorant seaman with the powerful, wealthy and well informed shipping company which is better able to evaluate the legal

---

24. Cf. Sobosle v. United States Steel Corporation, supra.

25. Since respondents paid the maintenance after a libel had been filed demanding it, they were not volunteers in making such payments.

merits of a claim and to pay the, to them, relatively small amounts usually involved in maintenance and cure actions."

The same policy considerations which lay behind the decisions in *Vaughan, Sims,* and *Jordan* are not present in this case because the libellant has not been denied maintenance reasonably concurrent with his need.[26] Also, the trial judge has noted that Dr. Beller had examined the libellant in October 1962 and his opinion, although not fully accepted by the trial judge, negatives any contention that Maritime was acting in bad faith in resisting the impleading petitions in these actions.

■ However, the respondents in these two actions (Nos. 163 and 449 of 1963) are entitled to counsel fees under the policy of the admiralty law which encourages shipowners to pay maintenance claims rapidly and discourages situations where a seaman may be denied a just claim for maintenance during the often lengthy period of time it takes competing shipowners, or a court, to resolve the issue of who is ultimately responsible for such payments.[27] In addition, the case of Jones v. Waterman S. S. Corporation, supra, requires this conclusion since the court in that case applied the indemnity principle to a situation analogous to this one.[28] Since the respond-

ents here in Nos. 163 and 449 of 1963 are entitled to indemnity, it follows that the right of indemnification should carry with it the right to counsel fees.[29] Cf. Cooper v. D/S A/S Progress, 188 F.Supp. 578, 588 (E. D. Pa. 1960); Paliaga v. Luckenbach Steamship Company, 301 F. 2d 403 (2nd Cir. 1962); Pure Oil Company v. Geotechnical Corp. of Delaware, 129 F.Supp. 194 (E. D. La. 1955).

It is also noted that counsel fees were awarded in The Apollon, 9 Wheat. 362, 6 L.Ed. 111 (1824), an admiralty suit where one party was put to expense in recovering demurrage of a vessel wrongfully seized. Mr. Justice Story, speaking for the court, said (at p. 379):

"The fifth item, allowing $500 as as counsel fees, is, in our opinion, unexceptionable. It is the common course of the admiralty, to allow expenses of this nature, either in the shape of damages, or as part of the costs. The practice is very familiar on the prize side of the court; it is not less the law of the court, in instance causes—it resting in sound discretion to allow or refuse the claim."

It is noted that The Apollon, supra, was cited with approval in Vaughan v. Atkinson, 369 U.S. 527, 530, 82 S.Ct. 997 (1962).

Rulings on requests for findings of fact and conclusions of law are contained in the attached Exhibit A.

---

26. Although the libellant had to institute an action in order to re-enforce his demand for maintenance in this case, the respondents paid maintenance reasonably promptly thereafter. Cf. Farrell v. United States, supra.

27. The ability to recover counsel fees against a previous shipowner believed to be primarily liable, who refuses to pay maintenance, should result in prompter payments of such maintenance by the current employing ship.

28. It is also noted that the U. S. Court of Appeals for the Third Circuit cited with approval a decision where indemnity was allowed in a case sounding in tort, Boston Woven Hose & Rubber Co. v. Kendall, 178 Mass. 232, 59 N.E. 657, 51 L.R.A. 781 (1901).

29. An award of counsel fees in this case is also consistent with the principle of unjust enrichment, or restitution; see Restatement of Restitution, § 76.

■ Judgments will be entered on July 1, 1966, in accordance with the following:

A. Respondent Clearwater in No. 163 of 1963 is entitled to recover the following amounts from impleaded respondents Maritime Overseas Corporation and Ocean Cargo Ships, Inc.: [30]
1. All maintenance paid by Clearwater to libellant $1,272.00
2. Interest:
 (a) Interest on $1272 at 4% from
 9/1/63 to 9/1/65 101.76
 (b) Interest on $1272 at 4¼% [31] from
 9/1/65 to 1/1/66 18.02
 (c) Interest on $1272 at 5% from
 1/1/66 to 6/30/66 31.80

 $1,423.58

3. Costs
4. Reasonable counsel fee [32]

B. Respondents Marine Carriers Corporation and Oceanic Petroleum Carriers, Inc., in No. 449 of 1963 are entitled to recover the following amounts from impleaded respondents Maritime Overseas Corporation and Ocean Cargo Ships, Inc.:
1. All maintenance paid by Oceanic to libellant $2,456.00
2. Interest:
 (a) Interest on $2456. at 4% from
 1/1/64 to 9/1/65 163.73
 (b) Interest on $2456. at 4¼% [31] from
 9/1/65 to 1/1/66 34.79
 (c) Interest on $2456. at 5% from
 1/1/66 to 6/30/66 61.40

 $2,715.92

3. Costs
4. Reasonable counsel fee [32]

C. Judgment will be entered for impleaded respondent and against respondent in No. 279 of 1964.

---

EXHIBIT A TO OPINION OF JUNE 20, 1966 IN NOS. 163 of 1963, 449 of 1963 and 279 of 1964 IN ADMIRALTY

RULINGS ON REQUESTS FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW (Documents 37 & 38 in No. 163 of 1963)

A. Requested Findings of Fact:
1. Paragraphs 1–8, 9(a), 9(c), 9(d), 10–26, 27(a), 28, 29(a), 29(b), 29(c), 30—

30. For brevity, impleaded respondents, Maritime Overseas Corporation and Ocean Cargo Ships, Inc., have been collectively referred to throughout these proceedings as "Maritime"; see footnote 2 of opinion of 6/1/66, filed as Document 57 in 39/1965.

31. 4¼% became available in the Philadelphia Saving Funds on 9/1/65 and 5% short-term interest obligations in small amounts became available at Philadelphia banks about 1/1/66.

32. If counsel cannot agree on the amount of the counsel fees by 6/30/66, respondents shall file an affidavit in support of their claims for counsel fees within 30 days and impleaded respondents will have 30 days after the filing of such affidavits for filing a responsive affidavit.

34, 35(a), 36, 38(b), 40–44, 46 and 48 of respondent's Requests (Document 37) are affirmed (as to 9(b), see N.T. 114).

2. Paragraphs 2, 5–7, 10, 11 and 14–17 of requests of impleaded respondents for findings of fact (Document 38) are affirmed.

3. All other requests for findings of fact are denied, except insofar as they are consistent with the foregoing opinion.

B. Requested Conclusions of Law (above-mentioned Documents 37 and 38 in No. 163 of 1963):

1. Paragraphs 1, 2, 3(a), 3(b), 4, 5, 7–9, 11 and 13–16 (deleting "and S. S. Commander" in 14) of respondent's requested conclusions of law (Document 37) are affirmed.

2. Paragraph 1 of requests of impleaded respondents for conclusions of law (Document 38) is affirmed.

3. All other requests for conclusions of law are denied, except insofar as they are consistent with the foregoing opinion.