## ROBINSON v. UNITED STATES.

### No. 2404.

District Court, S. D. Alabama, S. D. Jan. 16, 1948.

Vickers, Leigh & Thornton, of Mobile, Ala., for libelant.

Pillans, Cowley, Reams & Tappan, of Mobile, Ala., for respondent.

ERVIN, District Judge.

This cause coming on for hearing on the 7th day of January, 1948, and being submitted by the parties on the pleadings, the agreed statement of facts with the exhibits attached thereto, and on the testimony taken in open court, and the cause being argued by the proctors for the parties and being considered and understood by the court, the court finds the following:

### Finding of Facts.

1. The libellant resides within the territorial jurisdiction of this court.

2. The respondent consented to be sued herein under the provisions of the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., and the Clarification Act, 50 U.S.C.A.Appendix, § 1291.

3. The Steamship "American Fisher" was operated by respondent as a merchant vessel; and libellant was employed by respondent as steward thereon.

4. On the 27th day of October, 1945, while the libellant was engaged in the service of said vessel, and at a time when libellant was in apparent good health, libellant was injured by being struck with a 300 pound block of ice, in the right rear lower chest; as a result of which libellant contracted pleurisy with which libellant was made dangerously ill and for which libellant was hospitalized on November 3, 1945. Libellant remained as a patient in the hospital until December 21, 1945, at which time libellant had recovered from pleurisy, but was then suffering from arteriosclerosis, generally, resulting in arteriosclerotic heart disease and auricular fibrillation, which had not been manifest prior to time libellant signed on the Steamship "American Fisher." Thereafter, and up to and including the time of the trial in this cause, libellant has been under outpatient treatment at the United States Marine Hospital in Mobile, Alabama.

5. Libellant is still suffering from arteriosclerosis, generally, resulting in arteriosclerotic heart disease and auricular fibrillation.

6. Libellant's condition is incurable but improvement may be expected from further treatment for auricular fibrillation so long as the present treatment continues. No improvement may be expected from further treatment for arteriosclerotic heart disease.

7. Regardless of whether libellant's present condition was latent prior to the time of the injury, nevertheless the court finds that the present condition of libellant manifested itself during the period of libellant's service on the ship and that at least the injury sustained by libellant aggravated such pre-existent condition.

8. Libellant has been paid for maintenance and cure from November 3, 1945 through October 1, 1946.

9. Libellant has made written claim with respondent under the provisions of the Clarification Act and the claim has been administratively disallowed.

### Conclusions of Law.

1. This cause is within the Admiralty and Maritime jurisdiction of this court.

2. The respondent is subject to the jurisdiction of this court.

3. In this case the government waived its immunity from suit and, by legislative act, assumed the status of an ordinary ship owner and operator. So it is bound in a suit against it to the same extent as an ordinary owner. Could an ordinary owner limit its liability for care, or responsibility for the cure of a sailor who was injured while serving on its ship?

If so, such an owner could free himself completely by the regulations he imposed on his employees.

The duty of care and cure of a sailor is a law imposed on the ship by the Admiralty Courts.

So the regulation in this cause, respondent's Exhibit No. A, was void, so far as it undertook to limit the liability of the ship for care of its seamen.

4. The respondent is liable to libellant for the maintenance and cure from October 1, 1946, to the date of this trial, namely, January 7, 1948, in the sum of Two Thousand Five Hundred and No/100 ($2,-500.00) Dollars.

### Opinion.

I have decided to add an opinion to the Finding of Facts and Conclusions of Law.

This is a libel by George H. Robinson against the United States under the provisions of the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., and the Clarification Act, 50 U.S.C.A. § 1291, for maintenance and cure. The answer admits the jurisdictional averments in the libel but raises the issues that, (1) libellant is suffering from an incurable disability, (2) libellant's present physical condition in no way resulted from any injury received while libellant was in the service of the ship, and (3) all improvement in libellant's condition as reasonably might be expected to result from medical treatment has been had prior to the time for which this libel was brought.

The case was submitted on the pleadings, an agreed statement of facts and oral testimony taken in open court.

From the agreed statement of facts it appears that libellant, a steward in the Merchant Marine, received a physical examination on August 25, 1945 at the Marine Hospital in New Orleans and he was passed on as fit for duty. On October 27, 1945 libellant signed on the ship American Fisher operated by Tankers Company, Inc., for War Shipping Administration for a trip to Puerto Rico and return. That afternoon while engaged in the service of this vessel and while on board, libellant was struck by a three hundred pound block of ice in the right rear lower chest which was painful and knocked the breath out of libellant, but after a few minutes rest, libellant continued about his work. That night after retiring libellant awakened suffering severe pain in his chest. Libellant developed pleurisy and was ultimately hospitalized therefor, first at Guantanamo, Cuba, and then at Key West, Florida. Libellant was discharged from the hospital at Key West on December 21, 1945, at which time he was suffering from arteriosclerosis and auricular fibrillation. On January 23, 1946 libellant reported to the Marine Hospital at Mobile for out-patient treatment, where he has remained as an out-patient to the date

of the trial. Libellant was paid for maintenance and cure up to October 1, 1946.

On the trial of this case the parties submitted the agreed statement of facts. Libellant was then called as a witness and he testified orally in open court that the reasonable cost of his maintenance and cure in line with his former position as a steward was $50 a week.

Two physicians testified as experts on the issues presented by respondent's answer, and respondent offered in evidence a certified copy of Operations Regulation No. 108 promulgated by the Assistant Deputy Administrator for Ship Operations for War Shipping Administration effective August 1, 1945, which purported to set a schedule for maintenance for licensed and unlicensed seamen on vessels operated for War Shipping Administration.

The first issue presented, namely, whether libellant is suffering from an incurable disease, seems not to be controverted.

■ The second issue, namely, whether libellant's present condition resulted from the injury, presents more difficulty. It seems to be conceded by the parties that the pertinence of this issue arises from the dictum of Mr. Justice Stone in Calmar S. S. Corporation v. Taylor, 303 U.S. 525, 530, 58 S.Ct. 651, 654, 82 L.Ed. 993, where he says: " * * * we lay to one side those cases (for maintenance and cure) where the incapacity is caused by the employment. As to them considerations not present here may apply, which might be thought to require a more liberal application of the rule than we think is called for in this case." Based on this statement, respondent insists that since libellant's condition was not brought about by the injury, respondent is not liable for maintenance and cure in this case. Libellant argues that regardless of whether the injury caused the disability, the obligation of maintenance and cure is present, citing the Calmar case. It does not seem to me that a decision is called for on either of these issues.

Two physicians testified as experts for the respondent and both testified that the injury did not cause the disability. However, both testified that a blow to the chest might cause pleurisy and pleurisy might cause a strain on the heart. Furthermore excerpts from two medical texts were read in evidence without objection which might be opposed to the testimony of the experts. Be that as it may, it seems to me that by reason of the admitted happening of events even if libellant had a latent heart disorder which was undisclosed in the examination at the Marine Hospital in New Orleans on August 25, 1945, the blow suffered by him on October 27, 1945, set up a chain of events which aggravated this condition and the disability occurred sooner than it would have developed but for the injury sustained. Therefore, respondent's premise that there was no causal connection between the injury and the disability is not sustained, hence, the conclusion argued from this premise is not relevant.

■ The third issue raised by respondent is that no further improvement may be expected in libellant's condition from further medical treatment and therefore no further liability for maintenance and cure is due from respondent to libellant. Libellant argues that this conclusion does not follow from this premise.

Again, it does not seem that the legal issue is presented for decision, for though the expert witnesses testified that libellant could expect no further improvement in his arteriosclerotic heart condition, digitalis would improve the auricular fibrillation; in fact, if libellant ceases to take digitalis his life will probably be shortened.

Respondent argues that the improvement must be permanent in order to satisfy the obligation of maintenance and cure, citing the Calmar case, supra. But the opinion in the Calmar case itself says " 'cure' is care," and this concept seems to be borne out by the authorities generally.

Finally, respondent argues that this court is bound by the administrative rule or regulation of War Shipping Administration offered in evidence in fixing the amount to be allowed for maintenance and cure.

In this case the government waived its immunity from suit and, by legislative act, assumed the status of an ordinary ship owner and operator. So it is bound in a suit against it to the same extent as an or-

426

dinary owner. Could an ordinary owner limit its liability for care, or responsibility for the cure of a sailor who was injured while serving on its ship?

If so, such an owner could free himself completely by the regulations he imposed on his employees.

The duty of care and cure of a sailor is a law imposed on the ship by the Admiralty Courts.

So the regulation in this cause was void, so far as it undertook to limit the liability of the ship for care of its seamen.