## KOSLUSKY v. UNITED STATES.
### No. 4, Docket 22574.

United States Court of Appeals, Second Circuit.

Argued Dec. 7, 1953.

Decided Dec. 30, 1953.

O. Raymond Basile, New York City, for Joseph Koslusky, libellant-appellant, Stanley P. Danzig, New York City, of counsel.

J. Edward Lumbard, U. S. Atty., New York City, and Macklin, Speer, Hanan & McKernan, New York City, for United States, respondent-appellant, Leo F. Hanan and Martin J. McHugh, New York City, of counsel.

Before CHASE, Chief Judge, and AUGUSTUS N. HAND and MEDINA, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

Pursuant to the Suits in Admiralty Act, 46 U.S.C.A. § 745, the libellant brought suit against the United States for damages under the Jones Act, 46 U.S.C.A. § 688, and for maintenance and cure. Between May 16 and September 14, 1944, the libellant served as an oiler on the M/V Black Rock, an ocean going tugboat owned and operated at that time by the respondent, the United States.

On June 24, 1944, the Black Rock was ordered by the British Admiralty to proceed to the aid of a British merchant vessel, the Fort Norfolk, which, due to enemy action, was in a sinking condition in the English Channel. Upon viewing the seriousness of the condition of the Fort Norfolk, the master of the Black Rock refused to order his men to board her to put lines across or to perform any salvage operations. However, several members of the United States Gun Crew on board volunteered. After they boarded the Fort Norfolk three members of the crew, including the libellant who had just finished his watch below in the engine-room, volunteered to and did join the Navy men. A line was made fast to the bow but as the slack was being taken up the Fort Norfolk started to break in half and sink. All the volunteers had proceeded to the middle of the vessel except libellant, who was then trapped on the bow by swinging booms and shifting gear. While the others escaped down the Jacob's ladder which had been strung amidships, the libellant was forced to jump into the water from the bow, a distance estimated between 50 and 70 feet. All the seamen including the libellant swam safely to the Black Rock.

The libellant continued his job on the Black Rock till September 14, 1944. At that time he was admitted to the General Army Hospital at Plymouth, England, complaining of pains in his abdomen and nausea. He was later transferred by hospital ship to the United States Marine Hospital at Brighton, Mass., from which he was discharged on November 29, 1944, with a recommendation of thirty days convalescence. He received treatment as an outpatient at the United States Public Health Service Hospital in New York and was discharged as fit for sea duty in May of 1945. On May 29, 1945, he was examined and passed for sea duty on the S. S. Grace Abbott as an oiler and he served on her until August 22, 1945, when his sickness returned. At that time he entered a hospital in the Canal Zone for a few weeks, was then flown to the United States and on Oc-

tober 5, 1945 entered the Marine Hospital at Ellis Island. Since that time he has been in various hospitals including the United States Marine Hospital on Staten Island from which he was discharged on September 17, 1951, as permanently unfit for sea duty. He now lives at Sailors Snug Harbor, Staten Island.

The court below found that the evidence failed to establish a direct causal relationship between the libellant's physical condition and his jump from the bow of the Fort Norfolk. On the basis of this finding the claim for damages under the Jones Act was dismissed. This finding cannot be disturbed unless it is clearly erroneous and we think the record before us presents ample evidence to support it. The judge below found on credible evidence that the libellant showed no particular ill effects from his jump into the water and that he continued his normal work for a period of more than two months after it. The injuries which the libellant claims resulted from his jump include a disease of the brain, deafness, blindness in one eye and spondylisthesis, a slipping forward of the fifth lumber vertebra. However, the evidence manifests that all these injuries may be traced to causes other than the jump from the bow of the Fort Norfolk. The libellant has at times been suffering from syphilis and gonorrhea and admitted suffering a head injury in 1911 or 1912. In 1943 the libellant was injured when the S. S. Florence McDonald, a vessel on which he was serving at the time, was torpedoed. At that time he received medical treatment at the Gladstone convalescent home and their records show that he admitted having a cataract operation on his eye in 1936, and that he complained of loss of hearing and pains across his back. In 1944 when the libellant entered the Army Hospital at Plymouth, although he complained of abdominal pains and nausea, he also admitted that he had been suffering from loss of vision and hearing for a year. Thus he admitted his vision and hearing were failing even before his service on

the Black Rock. This evidence justifies the finding of the court below that no causal relationship existed between the libellant's injuries and his jump from the bow of the Fort Norfolk.

 The court below awarded maintenance and cure to the libellant from November 29, 1944, until January 18, 1951, which covers the period between the time libellant left the Black Rock and the time he was permanently discharged from the Marine Hospital on Staten Island in 1951, excluding of course periods when the libellant was hospitalized and when he was serving on the S. S. Grace Abbott in 1945. The obligation to pay maintenance and cure extends to a seaman disabled in the service of the ship, no matter what the cause, and liability extends for a fair and reasonable time after the voyage to effect improvement in the seaman's condition, *i.e.,* until no further improvement can be foreseen. Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct 651, 82 L.Ed. 993; Farrell v. United States, 336 U.S. 511, 516–519, 69 S.Ct. 707, 93 L.Ed. 850. The respondent argues that when the libellant was found fit for sea duty and signed on board the Grace Abbott in May, 1945, maximum improvement in his condition had been reached and therefore liability for maintenance and cure beyond that time is unjustified. But there is evidence showing that when the libellant left the service of the Grace Abbott he was suffering from the same injuries for which the respondent was under a duty to provide maintenance and cure. Moreover, the judge below discredited the fitness report made in May, 1945, and the record shows that the libellant's injuries were of a recurring nature. We cannot say that the award is unreasonable since it was not until his final discharge in 1951 from the Marine Hospital on Staten Island that it was clear that no further improvement in the libellant's condition would be possible.

Accordingly the decree is affirmed.