Joseph S. HYLTON

v.

STANDARD FRUIT & STEAMSHIP COMPANY.

No. 2050.

United States District Court
E. D. Louisiana
New Orleans Division.

Jan. 10, 1957.

---

Raymond H. Kierr, Samuel C. Gainsburgh, New Orleans, La., for libellant.

Deutsch, Kerrigan & Stiles, Brunswick G. Deutsch, Lansing L. Mitchell, New Orleans, La., for respondent.

CHRISTENBERRY, Chief Judge.

Joseph Hylton brought this action in admiralty against the Standard Fruit & Steamship Company to recover maintenance and cure for illness which befell libelant during the course of his service on respondent's vessel, the Steamship Contessa.

The case, having come on for trial upon the pleadings and proofs of the parties, was submitted to the Court for decision upon briefs and argument of counsel. After due deliberation, and pursuant to Supreme Court Admiralty Rule 46½, 28 U.S.C.A. the Court now makes the following Findings of Fact and Conclusions of Law:

Findings of Fact.

1.

Libelant was employed by respondent, Standard Fruit & Steamship Company, as a fireman-watertender aboard the Steamship Contessa from July, 1948, until the latter part of December, 1949;

2.

While in the service of the ship, libelant fell ill with diabetic acidosis for which he was removed from the vessel and hospitalized in Flint-Goodridge Hospital in New Orleans, Louisiana, from January 6, 1950, until February 2, 1950.

3.

While hospitalized, it was also discovered that libelant was suffering from acute heart failure (known medically as cardiac decompensation) characterized by swelling of his ankles, dizziness, headache, moisture in the bases of both lungs, enlarged heart and elevated blood pressure.

4.

On February 2, 1950, libelant was discharged from the hospital and observed by respondent's doctor as an outpatient until about February 10, 1950, when he was permitted to return to his job as fireman-watertender aboard the same vessel.

5.

Before libelant's return to the Steamship Contessa, he was given medication and instructions regarding his diet and self-care by respondent's physician, in that libelant was prescribed pills and advised to avoid eating sweets and starchy foods.

6.

At the time of libelant's return to sea duty in February of 1950, no x-rays or electrocardiograms were made on libelant, although, after the discovery of libelant's heart failure in the hospital, an electrocardiogram was abnormal, showing myocardial heart damage.

7.

Libelant was observed by respondent's doctor periodically between February of 1950 and February 1, 1951, during which time libelant continued his employment on the vessel with persistence of some of his earlier symptoms.

8.

No x-rays or electrocardiograms were made on libelant between February, 1950, and February 1, 1951, on which latter date libelant was declared unfit for further sea duty by respondent's doctor and discharged from respondent's employ without further treatment. Respondent's vessels were of foreign registry,

and its crewmen were not entitled to the usual benefits of the U. S. Public Health Service Hospitals.

9.

After his discharge by respondent on February 1, 1951, libelant remained ashore, and has been, up to the time of trial, unable to work.

10.

On April 23, 1951, because of the persistence of his symptoms, libelant sought medical attention from a doctor of his own choice, Dr. George J. Thomas, Jr., who regularly saw libelant a total of 68 times between April 23, 1951, and June 23, 1953.

11.

During the interval between libelant's discharge from the vessel on February 1, 1951, and his last regular visit to Dr. George Thomas in June, 1953, libelant was examined by respondent's doctors at Flint-Goodridge Hospital in October and November of 1951, where x-rays showed slight heart enlargement, bilateral enlargement of hilar shadows and evidence of pulmonary congestion in his lungs, with a normal cardiogram.

12.

In March of 1952, x-rays and fluoroscopic examination at Charity Hospital at New Orleans revealed no evidence of congestive heart failure in libelant's lungs, and another normal cardiogram was obtained.

13.

Dr. Thomas' treatment consisted of consultations, blood pressure readings and drugs, including aminophylline, a diuretic, having among its effect combatting of the lung congestion or fluid evident in libelant's lungs on the x-rays of October, 1951, and libelant's hypertension.

14.

At the time of libelant's termination of service with respondent's vessel on February 1, 1951, libelant was still suffering from the symptoms and effects of the conditions for which he was hospitalized and treated in January of 1950.

15.

Libelant's physical condition at the time of his termination of service on the Steamship Contessa was susceptible of further medical treatment and improvement.

16.

Libelant's physical condition improved from the time he left the Steamship Contessa on February 1, 1951, until he stopped seeing Dr. Thomas regularly on June 23, 1953, in that his lung congestion disappeared, his blood pressure was lowered and stabilized, and his symptoms of headache, dizziness and shortness of breath subsided.

17.

On June 23, 1953, libelant reached the maximum improvement that medical science was able to effect in his condition up to that time.

18.

From February 1, 1951, until June 23, 1953, libelant expended $404 for medical attention and medicine.

19.

Libelant supported himself from his savings after leaving respondent's employ until the time of trial.

20.

The parties have agreed that the maintenance rate is $6 per day.

Conclusions of Law.

1.

The Court has jurisdiction of the parties, and of the subject matter, under the General Maritime Law.

2.

Libelant is entitled to a decree against respondent, Standard Fruit & Steamship Company, in the amount of $5,244, as maintenance, at the rate of $6 per day from February 1, 1951, through June 23, 1953, a total of 874 days, and in the amount of $404 as cure. Farrell v. U. S., 1949, 336 U.S. 511, 517, 69 S.Ct. 707, 93 L.Ed. 850; Gibson v. U. S., D.C., 100 F. Supp. 954, affirmed 3 Cir., 1952, 200 F. 2d 336; U. S. v. Robinson, 5 Cir., 1949,

170 F.2d 578; Lamon v. Standard Oil Co., D.C.E.D.La.1953, 117 F.Supp. 831; and see also Peterson v. U. S., 9 Cir., 1955, 224 F.2d 748.

### 3.

Libelant's rights are reserved to claim whatever further maintenance and cure to which he may become entitled by reason of new discoveries in medical science. Farrell v. U. S., 1949, 336 U.S. 511, 517, 69 S.Ct. 707, 711, 93 L.Ed. 850.

### 4.

Libelant is further entitled to recover interest at 5% per annum from June 23, 1953, and costs.

A decree has been entered accordingly.