378 F.2d 584
 Edgar L. GORE
v.
CLEARWATER SHIPPING CORPORATION, Appellee in Nos. 16148 and 16149.
MARINE CARRIERS CORPORATION and Oceanic Petroleum Carriers,
Inc., Appellees in Nos. 16150 and 16151,
v.
MARITIME OVERSEAS CORPORATION and Ocean Cargo Ships, Inc., Appellants.
 Nos. 16148 to 16151.
 United States Court of Appeals Third Circuit.
 Argued Feb. 13, 1967.
Decided June 8, 1967.
 
 Harrison G. Kildare, Philadelphia, Pa. (Rawle & Henderson, John L. Quinlan, Philadelphia, Pa., on the brief), for appellants in all four cases.
 Robert N. Ferrer, Philadelphia, Pa., for appellee Clearwater Shipping Corp. in Nos. 16,148/9 and for appellees (Marine Carriers Corp., and Oceanic Petroleum Carriers, Inc.), in Nos. 16,150/1 (Richard H. Elliot, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., on the brief).
 Before SMITH and SEITZ, Circuit Judges, and JOSEPH S. LORD, III, District Judge.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 The questions of admiralty law which are here raised concerning a shipowner's rights to reimbursement from another party for maintenance and cure paid to a seaman have been considered in the Gooden case,[1] also decided today. In addition, this appeal presents a subsidiary issue involving liability for certain counsel fees and expenses.
 
 
 2
 On this appeal there is no dispute as to the facts found by the trial court. Libellant Gore ('seaman'), although he had had troubles with his back in 1954, 1957, 1958 and 1960, sought employment in late 1961 aboard the SS. Globe Carrier, owned by appellants Maritime Overseas Corporation ('Maritime') and Ocean Cargo Ships, Inc. ('Ocean Cargo'). A doctor found the seaman medically fit for this employment. However, the doctor did not know about the back ailments which the seaman later testified he had failed to mention because 'they hadn't bothered me for years.' The seaman was hired even though disclosure of his back difficulties might have required rejection pending further evaluation. On January 17, 1962, when the ship was in a Rotterdam shipyard for repairs, the seaman while on board slipped and fell on some loose sugar or salt scattered around a doorway.
 
 
 3
 Although he worked overtime for an hour and a half during the evening following the accident, the next day the seaman complained of pains in his left leg and back. A doctor advised two weeks rest and the seaman without working returned to the United States aboard the ship. For several months thereafter he received treatment at United States Public Health Service hospitals.
 
 
 4
 Pronounced fit for duty on a trial basis, the seaman obtained employment from July 31 to August 15, 1962 aboard the SS. Midland, owned by appellee Clearwater Shipping Corporation ('Clearwater'). The seaman did not sustain any accidents during this time, but his back condition in his words 'came on worse' when he made a 'hard left rudder' while standing wheel watch.
 
 
 5
 During the remainder of 1962 and the first few months of 1963 the seaman obtained further Public Health Service treatment for his back. In April 1963 he received a fit for duty slip and procured employment aboard the SS. Elemir, owned by appellee Oceanic Petroleum Carriers, Inc. ('Oceanic'). Although again there were no further accidents, this period of service also resulted in additional back trouble.
 
 
 6
 Compelled to leave Oceanic's ship in June 1963, the seaman received intermittent treatment at Public Health Service hospitals until April 15, 1964 when he once again was declared fit for duty. In spite of the prior fit for duty slips, it was only on this date that the seaman in fact reached maximum cure from his January 1962 back injury aboard the SS. Globe Carrier. A few days later he signed on for a month's service aboard the SS. Commander, owned by appellee Marine Carriers Corporation ('Marine'). The seaman injured his left ankle on board this ship.
 
 
 7
 After this injury there followed in the summer of 1964 more Public Health Service treatment, including some for his back. By September 1964 the seaman was given another fit for duty slip. He secured employment through November aboard the SS. Colorado, owned by Waterman Steamship Corporation ('Waterman'). This employment resulted in an aggravation of the seaman's back injury when he twisted his leg in Pakistan and when he worked under difficult conditions during a rough return crossing of the Atlantic.
 
 
 8
 The seaman in December of 1964 returned to the Public Health Service hospitals. In February 1965 a back operation was performed and by June 1965 the seaman again had qualified for a fit for duty slip. Near the end of that month he became a member of the crew of the SS. Chilore, owned by Venore Transportation Company ('Venore'). His tasks on that ship aggravated his back difficulties.
 
 
 9
 Forced to leave Venore's vessel in July, the seaman during the remainder of the summer of 1965 received further Public Health Service Treatments. On September 28, 1965 he was declared fit for duty, his status at the time of trial.
 
 
 10
 The seaman brought six separate admiralty suits against all the shipowners for maintenance and cure. Clearwater, Oceanic, Marine, and Waterman impleaded Maritime and Ocean Cargo, the owners of the SS. Globe Carrier on which the accident of January 1962 had occurred. The cases were were then consolidated and tried together. Only Waterman and Venore failed to settle the seaman's claims, but they do not appeal from the judgments subsequently rendered against them.
 
 
 11
 There remained for the trial court to decide the impleader issue of whether the maintenance and cure paid to the seaman by Clearwater, Oceanic and Marine could be recovered from Maritime and Ocean Cargo. The trial court concluded that the negligence of Maritime and Ocean Cargo and the unseaworthiness of their ship, the SS. Globe Carrier, caused the accident of January 1962 which resulted in the seaman's back injury. Further, the trial court found that this back injury was responsible for the seaman's periods of disability following service on the Clearwater and Oceanic ships in the summer of 1962 and the spring of 1963 but was not responsible for his disability following employment by Marine in the spring of 1964. On this basis the court below held that all the maintenance and cure payments which Clearwater and Oceanic were obligated to advance to the seaman could be recovered by them from Maritime and Ocean Cargo. Finally, Clearwater and Oceanic were awarded reasonable counsel fees and expenses incurred in the reimbursement proceedings against Maritime and Ocean Cargo, the amount of which is not disputed. Gore v. Maritime Overseas Corp., 256 F.Supp. 104 (E.D.Pa.1966).
 
 
 12
 Only Maritime and Ocean Cargo appeal from the adverse judgments ordering reimbursement of maintenance and counsel fees and expenses. We proceed to consider this appeal first in the light of the principles expressed in the Gooden cases.
 
 
 13
 There is no dispute that Clearwater and Oceanic were under a duty to make the maintenance and cure payments to the seaman for which the court below held Maritime and Ocean Cargo ultimately responsible.[2] However, Maritime and Ocean Cargo appear to disagree with the trial court that such payments were occasioned by a back injury arising out of the January 1962 accident on board their ship, although they do not deny that the accident was caused by their negligence and their vessel's unseaworthiness. Yet our independent review of the evidence reveals that the trial court was justified in concluding that 'the accident of January 1962 aboard the SS. 'Globe Carrier' was the substantial factor in causing the two periods of the libellant's disability which began in August 1962 and June 1963 while he was serving on the S.S. 'Midland' and the S.S. 'Elemir', respectively * * *.' 256 F.Supp. 104, 121.
 
 
 14
 Apart from the general arguments against reimbursement which have been considered in Gooden, counsel for Maritime and Ocean Cargo primarily press their contention that the seaman disqualified himself from receiving maintenance and cure. The fact relied upon is the seaman's failure to disclose material medical history at the time of the physical examination to determine his fitness for duty aboard the S.S. Globe Carrier. Yet there is no disagreement with the trial court that the controlling law on this point is contained in Sobosle v. United States Steel Corp., 359 F.2d 7 (3rd Cir. 1966). There this court stated that '* * * whether a seaman breached his duty to make it known to his prospective employer that he is unfit for service, and thus lost the right to maintenance and cure, will be determined by a subjective view of what he thought appropriate.' 359 F.2d 7, 11. Under this standard we think that the court below committed no error in concluding that the seaman did not wilfully conceal his prior back trouble. As counsel for Clearwater and Oceanic point out, for over a year prior to the physical examination the seaman had received no medical treatment whatsoever. And even if the seaman were held to have been disqualified from asserting maintenance and cure claims against Maritime and Ocean Cargo he would not thereby be deprived of his damages rights based on their negligence and their ship's unseaworthiness. Therefore, since here the seaman's complete recovery of damages from Maritime and Ocean Cargo would have eliminated his concurrent maintenance and cure claims against Clearwater and Oceanic because of the prohibition against double recovery, we conclude that the latter shipowners are entitled to reimbursement in full from the former shipowners which have the primary obligation arising out of negligence and unseaworthiness.
 
 
 15
 It does not necessarily follow from anything said so far, however, that Clearwater and Oceanic are also entitled to counsel fees and expenses incurred in pursuing their reimbursement rights. In fact, the Supreme Court has very recently reaffirmed the American rule that 'attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor.' Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (May 8, 1967). The Court recognized that 'limited ecceptions to the American rule have, of course, developed'. Idem. The task before us, then, is to determine whether in circumstances such as exist in this case another exception to the rule should be developed.
 
 
 16
 With respect to its award of counsel fees and expenses to the shipowners in the reimbursement suits the court below discussed Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962), and additional lower court cases. In the Fleischmann case the Supreme Court described Vaughan as holding that 'in appropriate circumstances * * * an admiralty plaintiff may be awarded counsel fees as an item of compensatory damages (not as a separate cost to be taxed).' The trial court recognized that the present situation differs from Vaughan in that here the seaman was not denied reasonably prompt payment of maintenance and cure. Nevertheless, the lower court justified its award of attorneys' fees and expenses on the ground that such awards would discourage situations where seamen would be denied maintenance pending resolution of ultimate responsibility therefor. But as we emphasized in our Gooden opinion, the determination of ultimate liability cannot be permitted to delay a seaman's recovery of maintenance and cure. Whether ultimately responsible or not, a shipowner must promptly fulfill its obligations toward its crew members. The trial court here recognized this necessity by deciding the seaman's maintenance and cure claim several days before working out the more complicated problems of reimbursement. 256 F.Supp. 104, 114 at footnote 6. Such recognition by trial courts of this requirement for prompt ascertainment of a seaman's rights, together with the sanction of assessing his attorney's fees and expenses against a recalcitrant shipowner under Vaughan principles, will provide sufficient safeguards without the necessity for awards of a shipowner's counsel fees and expenses against the party ultimately liable. For the same reasons we also disagree with the court below that the indemnity principle expressed in Jones v. Waterman S.S. Corp.,155 F.2d 992 (3rd Cir. 1946), requires an award of fees in favor of Clearwater and Oceanic and against Maritime and Ocean Cargo.
 
 
 17
 Finally, the trial court relied on The Apollon, 9 Wheat. 362, 6 L.Ed. 111 (1824), for support of its award of fees. It is of course true that Admiralty and other equity courts have fashioned exceptions to the general rule against assessing attorney's fees and expenses and that these exceptions 'have been sanctioned by (the Supreme) Court when overriding considerations of Justice seemed to compel such a result.' Fleischmann Distilling Corp. v. Maier Brewing Co., supra. But the cases applying these exceptions invariably involve wrongfulness or injustice often amounting to bad faith. Compare Byram Concretanks, Inc., v. Warren Concrete Products Co., 374 F.2d 649 (3rd Cir. 1967). Here the trial court specifically negatived any contention that Maritime and Ocean Cargo were acting in bad faith in resisting the claims against them for reimbursement. Indeed, prior to this and the Gooden case the existence of rights to reimbursement in these circumstances was apparently undetermined. Accordingly, we conclude that reimbursement of the shipowners' counsel fees and expenses may not here be allowed.
 
 
 18
 So much of the district court's judgment against Maritime and Ocean Cargo as awarded reimbursement of maintenance and cure which Clearwater and Oceanic paid the seaman will be affirmed. The remainder of the district court's judgment which awarded counsel fees and expenses will be reversed and the cause remanded to the district court for the assessment of such ordinarily taxable costs as is deemed appropriate in the light of the result here reached. Each party shall bear its own costs in this court.
 
 
 
 [1]
 Gooden v. Texaco, Inc., 3 Cir., 378 F.2d 576
 
 
 [2]
 In their brief counsel for Maritime and Ocean Cargo state that the seaman executed a covenant not to sue their clients for subsequent maintenance after his service on Clearwater's vessel SS. Midland beginning July 31, 1962. However, this statement is apparently in error because reference to the reference to the trial court's opinion reveals that 'libellant was only waiving any claim for maintenance for the period prior to July 31, 1962.' 256 F.Supp. 104, 116. As to the seaman's release of his claims for damages, counsel for Maritime and Ocean Cargo make no assertion that the consideration paid therefor reduced or eliminated his subsequent rights to maintenance and cure. Thus, there is no reason to suppose that Clearwater and Oceanic could have successfully resisted in whole or in part the seaman's maintenance and cure claims on the ground that satisfaction of them would entail duplication of recovery