John A. MEADE, Plaintiff,

v.

SKIP FISHERIES, INC., Defendant and Third-party Plaintiff,

v.

E. & G. FISHING CORPORATION, Third-party Defendant.

Civ. A. No. 73-847-C.

United States District Court, D. Massachusetts.

July 26, 1974.

Cyril E. O'Leary, New Bedford, Mass., for plaintiff.

Frank H. Handy, Jr., Richard B. Kydd, Boston, Mass., for defendant.

Solomon Sandler, Sandler, Sandler & Laramee, Gloucester, Mass., for third party defendant.

---

## OPINION

ALDRICH, Senior Circuit Judge.

This is an action for maintenance by a fisherman. It being clear that plaintiff was disabled as a result of troubles with his hip—an illness, rather than work-connected disability—the primary question presented is which of two vessel owners must ultimately pick up the tab.

Plaintiff has had some degree of hip trouble, ultimately diagnosed as Legg-Perthe's Disease, since childhood, but it was not such as to prevent him from fishing from 1939 to 1965. That year, while in the employ of the F/V Venture I, owned by the third-party defendant, E. & G. Fishing Corp., hereafter E. & G., he was advised to, and did have, an operation. E. & G. paid maintenance for some two years, after which time plaintiff, "perfectly cured" as the result of a "complete recovery," was able to work on a continuous basis.[1] He shipped on a number of vessels, and in 1969 returned to the Venture I. While he thereafter suffered from arthritis, there was no recurrence of his Legg-Perthe's problem, and he was still working when the Venture I was sold in October, 1971, and continued to work, with some interruptions, on other vessels until sometime in January. Plaintiff makes no claim, or at least no sufficient showing, for this period.

In January, 1972, plaintiff shipped on the F/V Matilda S., owned by defendant Skip Fisheries, Inc., hereafter Skip. The work on the Matilda S. was allegedly more arduous and, in any event, plaintiff's difficulties with his hip became worse. On March 27, 1972, the master, at plaintiff's request, gave him a certificate to the United States Public Health Service. He visited that service between trips, but continued to work until mid-April when the vessel was sold. By that time he was fully disabled. He went to the Brighton Marine Hospital, where he had a substantial restruction of his hip. When he first made a trial trip on the F/V Commonwealth, in October, 1973, he found he was still not able to work.

---

[1]. The language is plaintiff's. No medical evidence was presented, but I infer and assume in third-party plaintiff's favor that the underlying disease in fact never disappeared. I find, however, on that assumption, that it was incurable.

On various occasions plaintiff claimed for maintenance and cure against both E. & G. and Skip, but each took the position that the other was liable, as a result of which no one paid anything, although plaintiff's right to recover, at least against Skip, was manifest. He sued Skip in March, 1973, and Skip summoned E. & G. in as a third-party defendant. The case was not reached for trial until recently, when it was assigned to me. I find that shortly before trial plaintiff had adequately recovered. He is entitled to maintenance from mid-April, 1972 to April 5, 1974, at the daily union contract rate of $7., plus travel expenses incurred in connection with outpatient treatment, or $5,162.50, together with interest.[2]

It is Skip's position that since plaintiff first became unable to work when he was a member of the crew of the Venture I, and his disability occurring while he was a member of the crew of the Matilda S. was but an exacerbation of his original disease, ultimate legal responsibility lies in, or at least must be shared by, E. & G. For this it cites cases such as Gooden v. Sinclair Refining Co., 3 Cir., 1967, 378 F.2d 576 and Gore v. Clearwater Shipping Corp., 3 Cir., 1967, 378 F.2d 584. Resolution of this question requires an examination of the doctrine of maintenance and cure to assess Skip's liabilities, E. & G.'s responsibilities, and the propriety of Skip's plea over.

First, whatever may be E. & G.'s obligations, Skip is absolutely liable to plaintiff. The origin or cause of the disability, Farrell v. United States, 1949, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850, the fact that it pre-existed the voyage, McCorpen v. Central Gulf Steamship Corp., 5 Cir., 1968, 396 F.2d 547, originated on another vessel, Koslusky v. United States, 2 Cir., 1953, 208 F.2d 957, or even was due to the fault of another vessel, Gore v. Clearwater Shipping Corp., 3 Cir., 1967, 378 F.2d 584, are all irrelevant. Vis-a-vis plaintiff, Skip must pay, and the only question is the validity of its claim against E. & G. for reimbursement. Passing the matter that it should have paid first as a condition precedent to such a claim, see Gooden v. Sinclair Refining Co., 3 Cir., 1967, 378 F.2d 576, I find no liability in any event.

The basic hypothesis for such a claim is an obligation of E. & G. to plaintiff. The obligation to "cure" imports a responsibility only to finance maximum recovery, not to insure a seaman with an incurable disease for life. Farrell v. United States, supra. I recognize that neither a seaman's certification as fit for duty after an injury or illness, nor the fact of his subsequent employment on another ship or elsewhere is dispositive evidence of such a "cure," or, except that there cannot be double recovery, will otherwise automatically relieve a prior vessel of liability. See Vaughan v. Atkinson, 1962, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88; Gooden v. Sinclair Refining Co., supra, 378 F.2d at 579. Pyles v. American Trading & Production Corp., 5 Cir., 1967, 372 F.2d 611, 617. On the basis of plaintiff's remission from his Legg-Perthe's problem, maintained for four and one-half years after he returned to service, however, I find that his operation in 1965 and extended period of convalescence thereafter produced the maximum possible recovery in the maintenance and cure sense from the prior episode.

I am aware that the *Farrell* definition of cure as maximum recovery has been interpreted to encompass a duty to assure that a seaman's health does not deteriorate once it has reached the point of maximum cure. Neff v. Dravo Corp., 3 Cir., 1969, 407 F.2d 228, 233. But that is a touchy doctrine, Berke v. Lehigh Marine Disposal Corp., 2 Cir., 1970, 435 F.2d 1073, 1076 n. 3, cert. denied 404

2. For the same reason that I award counsel fees, I award interest from the due dates of payment, not merely from the date of the writ, or $400.

U.S. 825, 92 S.Ct. 55, 30 L.Ed.2d 53; *cf.* Fitzgerald v. United States Lines Co., 1963, 374 U.S. 16, 19 n. 7, 83 S.Ct. 1646, 10 L.Ed.2d 720; Travis v. Motor Vessel Rapids Cities, 8 Cir., 1963, 315 F.2d 805, 810. I will not apply it to mean that a shipowner is responsible once a seaman has become fully capable of resuming work, for subsequent re-activations of an incurable disease. *Cf.* Stewart v. Waterman SS. Corp., E.D. La., 1968, 288 F.Supp. 629, 635, aff'd, 5 Cir., 1969, 409 F.2d 1045, cert. denied 397 U.S. 1011, 90 S.Ct. 1239, 25 L.Ed. 2d 423; Vassos v. Soc. Trans-Oceanica Canopus, S.D.N.Y., 1959, 205 F.Supp. 845, 846, 848. Accordingly, E. & G. should not have been held responsible even if plaintiff had sued it directly.

But this is not all. I agree, of course, with the Third Circuit view expressed in Gore v. Clearwater Shipping Corp., supra, that the second vessel should be indemnified by the first when the disability was due to the actionable fault of the first. But I do not accept that court's doctrine of contribution, Gooden v. Sinclair Refining Co., supra. When neither party is at fault I would let the loss lie where it falls. The present case is an unfortunate illustration of what happens to the seaman when the second vessel sees a chance of persuading someone else to share its responsibility, and hence "to stir contentions, cause delays, and invite litigations." Farrell v. United States, supra, 336 U.S. at 516, 69 S.Ct. at 710; *see* Vaughan v. At-kinson, 1962, supra, 369 U.S. at 538, 82 S.Ct. 997 (Stewart, J., dissenting). But more than that, even though neither vessel is at fault, it is the second that has control of the situation. No sufficient purpose, short of a case where the seaman's disability was causally related to legal fault of the first vessel, would seem served in pursuing the possible connection of the second disability with the first. There would also be difficulties. Again, the case at bar is an illustration; I was asked to consider whether the work on the second vessel was,

although proper, more arduous than on the first, and hence caused the disability.

In sum, I do not see the "equities" of the situation as being as obvious as appeared to the *Gooden* court, and I would not allow contribution even if the disability were established to be a continuation of difficulties originated on, but not due to the fault of the prior vessel.

 Since there was no semblance of an excuse, even under Skip's principal case of Gooden v. Sinclair Refining Co., supra, for Skip's withholding maintenance while it litigated its claim against E. & G., I regard its non-payment as "callous" within Vaughan v. Atkinson, supra, and award counsel fees to the plaintiff in the amount of $1,000.

Judgment to be entered for the plaintiff in accordance herewith; third-party complaint dismissed.