Leonard GAUTHIER, Plaintiff,

v.

CROSBY MARINE SERVICE, INC., ABC Insurance Company, Crosby Industries, Inc., DEF Insurance Company, Dixie Oil Tools, Inc., GHI Insurance Company, Mark Drilling Inc., JKL Insurance Company, Exxon Corporation, MNO Insurance Company, L. Griffin, Inc., American Marine Services, Defendants.

Civ. A. No. 79–2366.

United States District Court,
E. D. Louisiana.

Sept. 17, 1980.

A. Gordon Grant, Jr., New Orleans, La., James B. Irwin, Alexandria, La., for plaintiff.

John B. Peuler, Michael L. McAlpine, New Orleans, La., for defendants Crosby Marine Services, Inc. and American Home Assurance Co.

Robert M. Contois, Jr., Grady S. Hurley, for third party defendant L. Griffin, Inc.

Rene A. Pastorek, Gretna, La., for defendant Dixie Oil Tools, Inc.

Joseph L. Waitz, Houma, La., for defendant Mark Drilling, Inc.

Rene J. Mouledoux, New Orleans, La., for defendant Exxon Corp.

John E. Bergstedt, Lake Charles, La., for third party defendant American Marine Services, Inc.

CASSIBRY, District Judge:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter was heard by the Court sitting without a jury on June 2, 1980 on plaintiff's severed claim for maintenance and cure. After carefully considering the pleadings, the evidence, and the arguments of the parties, I enter the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Plaintiff, Leonard Gauthier, is a resident of Louisiana domiciled in Harvey, Louisiana.

2. At all times pertinent, defendant Crosby Marine Service, Inc. was a corporation organized and existing under the laws of the State of Louisiana doing business within the Eastern district of Louisiana. Defendant American Home Assurance Company is a foreign corporation authorized to do business in Louisiana and is the liability insurer of Crosby for the claims asserted in this litigation.

2a. Third party defendant, L. Griffin, Inc., was at all times pertinent a corporation organized and existing under the laws of the State of Louisiana with its principal place of business in New Orleans, Louisiana.

3. On July 3, 1978 plaintiff was employed by Crosby as the operator of the M/V Ricky III. On that day plaintiff sustained a groin injury while acting in the course and scope of his employment with Crosby. Seaman status is not contested. Crosby paid plaintiff wages until the end of the voyage and started paying him maintenance at the rate of $8.00 per day on July 6, 1978.

4. From July 5 through August 22, 1978 plaintiff was treated by Dr. Ralph Lambert and Dr. John Cranmer for his groin injury. Plaintiff was discharged on August 22, 1978 fit to return to work effective August 28, 1978. The doctors did not contemplate that further medical treatment would be necessary at that time.

5. Although the doctors did not think further treatment would be necessary, plaintiff was actually suffering from a communicating hydrocele that would necessitate surgical repair. A recurring symptom of a communicating hydrocele is periodic swelling of the scrotal sac with fluid. Nevertheless, plaintiff believed in good faith that he was fit for duty on August 27, 1978, and later on September 22, 1978.

6. After his discharge from the doctors' care, plaintiff returned to work and completed a one-week tour of duty on the M/V Ricky III in early September without incident.

7. After the one-week tour, Crosby fired plaintiff. No evidence was presented to indicate that the firing was related to plaintiff's physical condition. Plaintiff thereafter immediately obtained employment with third-party defendant, L. Griffin, Inc., on September 22, 1978 aboard the M/V Dwayne G. On the third day of his employ with Griffin, plaintiff's prior groin injury flared up again. Although plaintiff testified that he could not trace the recurrence of symptoms to any isolated trauma

or accident aboard the Dwayne G, there was evidence to indicate that the general nature of his activities on the vessel may have contributed to the renewed onset of painful swelling.

8. Plaintiff was hospitalized on September 25, 1978 by Dr. Lambert, who determined at that time that surgery would be necessary to correct the hydrocele/hernia problem.

9. During the course of routine pre–operative testing, the hospital performed an EKG on plaintiff. The result showed an abnormal heart condition. Further testing revealed that plaintiff was suffering from a serious multiple coronary arterial blockage condition, requiring immediate surgery. Although the heart surgery had to be performed before plaintiff's groin problem could be corrected the heart problem would have had to be corrected in any case because it threatened his life.

10. The medical evidence indicated that plaintiff's condition was long–standing and existed while he was in the employ of Crosby. Plaintiff's condition was not caused by the work he performed for Crosby or for Griffin, however. Moreover, before his heart condition was diagnosed, plaintiff in good faith was not aware that he had a cardiac problem. Plaintiff's physician was also not aware of plaintiff's heart condition.

11. Plaintiff was hospitalized at West Jefferson General Hospital from September 25 through October 6, 1978 for testing in connection with his heart condition. Plaintiff was released on October 6 and groin treatment was suspended so that plaintiff could obtain treatment for his life–threatening cardiac condition. Crosby paid plaintiff's medical expenses during this period as reflected in the stipulation of the parties. Crosby suspended maintenance and cure payments at the time plaintiff's cardiac condition was diagnosed, after extensive investigation.

12. On October 12, 1978 plaintiff entered Ochsner Foundation Hospital for multiple, open–heart bypass surgery to correct his heart problem. Blue Cross paid a substantial portion of plaintiff's medical bills under a policy plaintiff maintained out of personal funds.

13. While convalescing at home following his heart surgery, plaintiff developed a noninfectious hepatitis. This disease was unrelated to either the groin or the heart condition. Plaintiff was hospitalized at West Jefferson Hospital from December 27, 1978 until January 3, 1979 for treatment of the hepatitis. Plaintiff claims unpaid maintenance from defendant (as a portion of amounts he paid in hospital board) for this period. A substantial portion of these expenses were paid by Blue Cross, as well.

14. Plaintiff's cardiac condition improved to the point of maximum cure on January 22, 1979.

15. Plaintiff re–entered West Jefferson General Hospital on March 4, 1979 for groin surgery. The surgery was performed, and plaintiff was released from the hospital on March 13, 1979. While convalescing, plaintiff developed an abscess in the groin area that required further hospitalization from March 30 until April 11, 1979.

16. Plaintiff reached maximum cure from all illnesses at issue in this suit on July 9, 1979.

17. The Blue Cross Hospitalization Policy was procured by plaintiff for himself and his family at his own expense. No part of the monthly premiums were paid by Crosby or Griffin.

18. Third–party defendant, L. Griffin, Inc., has paid no maintenance and cure to plaintiff.

## CONCLUSIONS OF LAW

1. This court has jurisdiction based on the Jones Act, 46 U.S.C. § 688 (1976), and the admiralty jurisdiction of the court, 28 U.S.C. § 1333 (1976). The claim for maintenance and cure is within the admiralty jurisdiction of the court. *See Fitzgerald v. United States Lines Co.,* 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963); *Haskins v. Point Towing Co.,* 395 F.2d 737 (3d Cir. 1968), *cert. denied* 400 U.S. 834, 91 S.Ct. 68, 27 L.Ed.2d 66 (1970).

■ 2. Although a plaintiff may request a trial by jury based on a Jones Act claim, a defendant may nevertheless obtain the advantages of third party admiralty practice based on a joined admiralty claim within the meaning of Federal Rule of Civil Procedure 9(h). *McCune v. F. Alioto Fish Co.*, 1976 A.M.C. 156 (N.D.Cal.1975); *Saus v. Delta Concrete Co.*, 368 F.Supp. 297 (W.D.Pa.1974); *cf. Haskins*, 395 F.2d 737 (right to jury). Because the claim for maintenance and cure is a claim in admiralty within the meaning of Rule 9(h), defendant as third party plaintiff has properly tendered third party defendant to plaintiff as a joined defendant pursuant to Federal Rule of Civil Procedure 14(c). *Id.*

■ 3. The maintenance paid to plaintiff at the rate of $8.00 per day was inadequate. For the reasons set forth in *Robinson v. Plimsoll Marine, Inc.*, 460 F.Supp. 949 (E.D.La.1978) (Cassibry, J.), $15.00 per day is the proper rate of maintenance. All maintenance due plaintiff from the date of injury to the date of maximum cure should have been paid at that rate. Crosby is, of course, entitled to a set-off for those payments that have been made at the lower rate.

■ 4. A vessel owner is obligated to furnish a seaman with maintenance and cure benefits with respect to an injury or illness that occurs or manifests itself while the seaman is in the service of the vessel. The origin or cause of the disability, the fact that it pre-existed the voyage, originated on another vessel, or even was due to the fault of another vessel are all irrelevant. *Meade v. Skip Fisheries, Inc.*, 385 F.Supp. 725 (D.Mass.1974) and cases cited therein. As long as a seaman believes in good faith that he is fit for duty, he is entitled to maintenance and cure from his present employer notwithstanding that he falls ill from a pre-existing illness. *Gooden v. Sinclair Refining Co.*, 378 F.2d 576 (3d Cir. 1967); *Burkert v. Weyerhaeuser Steamship Co.*, 350 F.2d 826 (9th Cir. 1965); *Dragich v. Strika*, 309 F.2d 161 (9th Cir. 1962); *Meade*, 385 F.Supp. 725; *Diaz v. Gulf Oil Corp.*, 237 F.Supp. 261 (S.D.N.Y.

1965); *Smith v. Isthmian Lines, Inc.*, 205 F.Supp. 954 (N.D.Cal.1962); *see McCorpen v. Central Gulf Steamship Corp.*, 396 F.2d 547, 548–50 (5th Cir.), cert. denied, 393 U.S. 894, 89 S.Ct. 223, 21 L.Ed.2d 175 (1968). *But see Stewart v. Waterman Steamship Corp.*, 288 F.Supp. 629, 634 & n. 9 (E.D.La. 1968) (Boyle, J.) aff'd per curiam, 409 F.2d 1045 (5th Cir. 1969), cert. denied, 397 U.S. 1011, 90 S.Ct. 1239, 25 L.Ed.2d 423 (1970). In fact, at least two courts would hold the present employer solely liable for all maintenance and cure under the "last ship" rule. *Meade*, 385 F.Supp. 725, 728 (D.Mass.1974) (Aldrich, J.); *Diaz*, 237 F.Supp. 261 (Feinberg, J.). Mr. Gauthier, in the instant case, had a reasonable, good faith belief on September 22, 1978 that he was fit for duty with Griffin. Griffin was therefore liable to plaintiff for maintenance and cure for the hydrocele and the heart condition after plaintiff's groin symptoms recurred on September 25, *see Gooden*, 378 F.2d at 578 (prior injuries "heightened" on later ship although not involved in any other accidents), and the heart condition was subsequently discovered. Griffin was further liable for maintenance and cure during the period plaintiff was convalescing and he contracted hepatitis, continuing to the date of maximum cure. *Brahms v. Moore–McCormack Lines, Inc.*, 133 F.Supp. 283 (S.D.N.Y.1955) (new illness part of the progressive manifestation of plaintiff's present inability to care for himself which began aboard ship).

■ 5. The "last ship" rule can lead to unduly harsh results, especially as in a case like this where the seaman worked less than three days for his new employer after having so recently been discharged from his former employ. To be sure, a vessel owner is not a lifelong insurer of a seaman. *See Gooden*, 378 F.2d at 582–83; *Meade*, 385 F.Supp. at 727. *But see Loverich v. Warner Co.*, 118 F.2d 690 (3d Cir.), cert. denied, 313 U.S. 577, 61 S.Ct. 1104, 85 L.Ed. 1535 (1941) (discharged due to suspected severe illness; employer held liable for maintenance and cure six years after discharge). But courts have held a prior employer liable

for maintenance and cure a reasonable time after a voyage where it was clear that an illness was present or caused during the period of employment and recurred after seemingly being arrested, *Gooden*, 378 F.2d 576; *Koslusky v. United States*, 208 F.2d 957 (2d Cir. 1953), or did not fully manifest itself or become finally diagnosed until after the voyage, *George v. Chesapeake & Ohio Railway Co.*, 348 F.Supp. 283 (E.D.Va. 1972); *Petition of United States*, 303 F.Supp. 1282 (E.D.N.C.1969), *aff'd per curiam*, 432 F.2d 1357 (4th Cir. 1970); *Hylton v. Standard Fruit & Steamship Co.*, 148 F.Supp. 234 (E.D.La.1957) (Christenberry, C.J.); *Brahms v. Moore–McCormack Lines, Inc.*, 133 F.Supp. 283 (S.D.N.Y.1955); *Albano v. United States*, 98 F.Supp. 150 (D.Mass. 1951); *see Robinson v. United States*, 76 F.Supp. 422 (S.D.Ala.), *aff'd*, 170 F.2d 578 (5th Cir. 1948), *cert. denied*, 339 U.S. 923, 70 S.Ct. 611, 94 L.Ed. 1345 (1950). The testimony in this case indicated that Gauthier did not ever reach maximum care for his groin injury, but the symptoms would have recurred periodically until the hydrocele was repaired surgically. The testimony also established that plaintiff's heart condition was the result of many years of accumulation of fatty deposits and cholesterol in the arteries. Both of these conditions afflicted plaintiff while he was in the employ of Crosby, and it is only fair that Crosby share the burden of maintenance and cure for them. Because the hepatitis was totally divorced from plaintiff's service for Crosby, Crosby is not liable for maintenance and cure associated with that illness.

6. I agree with my brethren who espouse the last ship rule that a seaman ·should not be required to ascertain, seek out, and pursue the proper employer to get his award. *See Meade*, 385 F.Supp. at 728; *Diaz*, 237 F.Supp. at 266. Yet both potentially liable employers are before me here, and it would be inequitable to force one or the other to shoulder the entire burden. I will therefore follow the Third Circuit and apportion liability equally between the two ostensibly innocent employers. *Gooden*, 378 F.2d 576. Of course, if Crosby is later found to be culpable for negligence or un-

seaworthiness, it will be liable for all of the maintenance and cure attributable to the groin injury. *Id.; Gore v. Clearwater Shipping Corp.*, 378 F.2d 584 (3rd Cir. 1967); *see Richardson v. St. Charles–St. John the Baptist Bridge & Ferry Authority*, 284 F.Supp. 709 (E.D.La.1968) (Rubin, J.). Because the heart condition would have needed immediate attention eventually, and its discovery in connection with the groin injury was coincidental (although apparently quite fortunate for Mr. Gauthier), those expenses will be shared equally regardless of the findings of the jury on the other causes of action.

 7. Employers of seamen are liable for maintenance and cure regardless of fault. *Aguilar v. Standard Oil Co.*, 318 U.S. 724, 730, 63 S.Ct. 930, 933, 87 L.Ed. 1107 (1943); *Oswalt v. Williamson Towing Co.*, 488 F.2d 51 (5th Cir. 1974). The payments are designed to compensate the seaman for sums spent for support and medical expenses during the course of treatment. *Oswalt* at 53. One who has not paid his own expenses, on the other hand, whether a minor living at home with his parents or otherwise, cannot recover maintenance and cure from the ship owner. *Marine Drilling, Inc. v. Landry*, 302 F.2d 127, 128 (5th Cir. 1962); *Field v. Waterman Steamship Corp.*, 104 F.2d 849 (5th Cir. 1939); *Volkenburg v. Nederland–Amerik Stoomv. Maats.*, 221 F.Supp. 925 (D.Mass.1963), *aff'd*, 336 F.2d 480 (1st Cir. 1964).

The Third Circuit has held that the collateral source rule does not apply to maintenance and cure, and it denied expenses for medical care and hospitalization covered by a plaintiff's Blue Cross–Blue Shield insurance. *Shaw v. Ohio River Co.*, 526 F.2d 193 (3d Cir. 1975). *See Richardson*, 284 F.Supp. at 713 (dicta). In *Shaw*, the policy premiums were paid by the employer, however. In the instant case, Gauthier maintained the Blue Cross policy for the benefit of himself and his family at his own expense.

 In spite of their historic role as protector of seamen, courts have been careful to limit them to a single recovery of

damages for injury, especially where there might be overlap with a prior award of maintenance and cure. *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 404 (5th Cir. 1979); *Richardson*, 284 F.Supp. 709. Moreover, courts have scrutinized claims for cure at private hospitals to ensure that the same care could not have been rendered at a Public Health Service Hospital at no cost to the employer. *Kossick v. United Fruit Co.*, 365 U.S. 731, 736–37, 81 S.Ct. 886, 890–891, 6 L.Ed.2d 56 (1961); *Oswalt*, 488 F.2d at 54; *Petition of United States*, 303 F.Supp. 1282, 1321 (E.D.N.C.1969), *aff'd per curiam*, 432 F.2d 1357 (4th Cir. 1970) (seaman not entitled to recover cure for private hospital absent showing that care unavailable at Public Health Service Hospital).

■ I agree with the *Shaw* court that the reasons for the collateral source rule in cases based on fault do not apply to a no–fault claim for maintenance and cure. *See* 526 F.2d at 201. A tortfeasor should not profit because his victim happened to be protected by insurance, *see Gypsum Carrier, Inc. v. Handelsman*, 307 F.2d 525, 534–35 (9th Cir. 1962), but an innocent shipowner should not bear a burden the seaman has already been relieved of. *But see id.* at 536–37; *cf. Haughton v. Blackships, Inc.*, 462 F.2d 788 (5th Cir. 1972) (collateral source rule applies to maritime pension contributed to by employer–tortfeasor). Furthermore, this seaman is not the homeless, friendless, helpless, poor wanderer in a foreign port. *See Marine Drilling, Inc. v. Landry*, 302 F.2d 127, 128 (5th Cir. 1962); *Brahms v. Moore–McCormack Lines, Inc.*, 133 F.Supp. 283, 287 (S.D.N.Y.1955). Here, plaintiff has a home base, a family, and the wherewithall to provide protection for them. He also might have more readily used the auspices of the Public Health Service for treatment of, say, his hepatitis if he knew that the employer was going to contest liability for cure and no prompt payment from an insurance policy was forthcoming.

■ Unlike the claim for groin cure that might eventually be decided was a case of "fault", the amounts paid by Blue Cross applied to plaintiff's cardiac and hepatitis expenses, neither of which were related to plaintiff's employment on the vessels. Defendants are therefore entitled to set–off the amounts paid by Blue Cross.

■ 8. I find no basis to award plaintiff attorney's fees for arbitrary and capricious refusal to pay maintenance and cure by Crosby. *Vaughan v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); *see Lirette v. K & B Boat Rentals, Inc.*, 579 F.2d 968 (5th Cir. 1978). On the contrary, defendants' representative showed remarkable concern for plaintiff's welfare. Plaintiff made no claim for attorney's fees from third party defendant. *See Meade v. Skip Fisheries, Inc.*, 385 F.Supp. 725, 728 (D.Mass.1974).

## CONCLUSION

1. Defendant Crosby is solely liable for maintenance at the rate of $15.00 per day from July 6 through August 27, 1978.

2. Defendant Crosby and third party defendant Griffin have co–extensive liability for maintenance at the rate of $15.00 for all days not in the hospital and cure from September 25, 1978 through December 26, 1978.

3. Third party defendant Griffin is liable directly to plaintiff for maintenance at the rate of $15.00 per day for all days not spent in the hospital and cure from December 27, 1978 through January 3, 1979 and from January 23 through March 3, 1979.

4. Defendant Crosby and third party defendant Griffin have co–extensive liability for maintenance at the rate of $15.00 per day for days not spent in the hospital and cure from January 4 through January 22, 1979 and from March 4 through July 9, 1979.

5. Defendant Crosby and third party defendant Griffin are both entitled to contribution from the other to the extent necessary to prevent double recovery by plaintiff (for all amounts in excess of their one–half share of plaintiff's recovery). Crosby and Griffin are entitled to set–off payments made by Blue Cross on those amounts for

which they would otherwise be liable. Each is entitled to set-off amounts already paid to plaintiff from their ultimate liability.

6. If Crosby is ultimately held culpable for plaintiff's groin injury, third party defendant Griffin will be entitled to exoneration for maintenance and cure paid for September 25, 1978 and from March 4 through July 9, 1979.

The clerk will prepare a judgment consistent with this opinion.